RUTH E. RICHTER, APPELLANT, V. CITY OF OMAHA,
A MUNICIPAL CORPORATION, APPELLEE.
729 N.W.2d 67

Filed March 23, 2007.    No. S-05-1550.

John K. Green, of Pickens, Daubman & Green, L.L.P., for appellant.

Michelle Peters, Assistant Omaha City Attorney, for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

## NATURE OF CASE

Ruth E. Richter sustained personal injuries when she stepped into a hole located on a public right-of-way in front of her home. Richter claims the City of Omaha (the City) was negligent in failing to warn the public of a dangerous condition, failing to provide safe passage of a right-of-way, and failing to exercise due care in the operation of its business. Following a bench trial, the court determined that the City was not negligent and dismissed Richter's petition. We affirm.

## FACTS

On May 28, 1999, a city work crew was trimming overhanging branches from a tree located in front of Richter's home. Richter walked outside and asked the workers to stop trimming the trees. The workers refused and asked her to back away from them and their truck. As Richter backed away, she stepped into a hole with her right foot and fell to the ground, injuring her ankle and twisting her knee. Richter testified that as a result of her fall, she saw multiple doctors and incurred approximately $11,422 in total medical expenses.

The hole in which Richter fell was located on a grassy area between the street and the sidewalk in front of Richter's residence. Although this section of land is a public right-of-way, Richter was responsible for maintaining the area.

The parties dispute how the hole was created. Richter testified that she believed the City created the hole when it removed a "No Parking" sign and failed to fill in the hole left behind. Richter testified that before she fell, there were three traffic signs posted

along this public right-of-way. She alleges, however, that at the time of her accident on May 28, 1999, there were only two traffic signs remaining because one of them had been removed, thus creating the hole that caused her to fall.

Shortly after her fall in 1999, Richter took pictures of the hole and the signs on the right-of-way, and she offered the pictures into evidence at trial. The pictures revealed that at that time, there were three signs posted on the public right-of-way. The southernmost sign is a "No Turn on Red" sign, the middle sign is a "No Trucks Over 6 Tons" sign, and the northernmost sign is a "No Parking" sign. Although the record does not provide exact measurements, the pictures show that the hole in which Richter fell was located a few feet to the south of the middle sign.

Richter testified that although the pictures establish that there are three signs posted on the public right-of-way, at the time of her accident, there were only two signs posted, the "No Turn on Red" sign and the "No Trucks Over 6 Tons" sign. In essence, Richter claimed that at some point before her fall, the City removed the "No Parking" sign, creating the hole that caused her to fall, and left the other two signs in place. She then claimed that at some point after she fell, the City reinstalled the "No Parking" sign and placed it north of where it had been previously located, as shown in the photographs she offered into evidence. On cross-examination, Richter admitted that she did not know when the City allegedly removed the "No Parking" sign.

The City presented evidence that it did not remove any sign from the location in question and, thus, did not create the hole that caused Richter to fall. The City offered the testimony of Leanne Ziettlow, the acting traffic engineer who, at all times relevant to this case, was also the head of the traffic maintenance division. As part of her job, Ziettlow maintained the records regarding the removal and replacement of traffic signs within city limits.

Ziettlow testified that she reviewed the City's work orders relating to the removal and replacement of traffic signs for the years 1998 and 1999 and did not find any record that would indicate that a sign had been removed or replaced in the public right-of-way in front of Richter's home. Without objection, Ziettlow explained that she was unable to review older work

orders because the older work orders are destroyed as time passes and the work orders prior to 1998 had already been destroyed.

Ziettlow further testified that approximately 10 years before trial, the City stopped ordering nongalvanized posts for the signs. She explained that the "No Trucks Over 6 Tons" sign, located a few feet in front of the hole, was a nongalvanized post and thus had been in that location for at least 10 years. Ziettlow testified that, assuming the "No Trucks Over 6 Tons" sign had been in place for at least 10 years, the City would not have originally placed a "No Parking" sign in the location claimed by Richter.

Richter filed a petition on July 31, 2000, under the Political Subdivisions Tort Claims Act,[1] alleging that the City was negligent in failing to warn the public of a dangerous condition, failing to provide safe passage of a right-of-way, and failing to exercise due care in the operation of its business. After a bench trial, the court found in favor of the City. The court explained that "[T]he evidence was insufficient as to how the hole came to be, when it came to be a hole, and whether the City knew of this hole prior to [Richter's] injury." The court continued, "there was insufficient evidence that the City caused the hole or that it knew it was there so it could be repaired in a timely manner" and "[t]o find that it was caused by the City or that the City knew of the hole and failed to repair it would be speculation." Richter appealed.

## ASSIGNMENT OF ERROR

Richter assigns, consolidated and restated, that the district court erred in finding that she failed to prove by a preponderance of the evidence that the City was negligent.

## STANDARD OF REVIEW

In actions brought pursuant to the Political Subdivisions Tort Claims Act, the findings of a trial court will not be disturbed on appeal unless they are clearly wrong.[2] When determining the sufficiency of the evidence to sustain the trial court's judgment, it must be considered in the light most favorable to the successful party; every controverted fact must be resolved in favor of such

---

[1] Neb. Rev. Stat. § 13-901 et seq. (Reissue 1997).

[2] *McGrath v. City of Omaha*, 271 Neb. 536, 713 N.W.2d 451 (2006).

party, and it is entitled to the benefit of every inference that can reasonably be deduced from the evidence.[3]

## ANALYSIS
### BEST EVIDENCE RULE/SPOLIATION

On appeal, Richter argues that her "testimony is sufficient to prove by a preponderance of the evidence that the City . . . was negligent because the City . . . destroyed relevant work orders while this lawsuit was pending."[4] In support of her argument, Richter relies on Neb. Evid. R. 1004,[5] which is an exception to Neb. Evid. R. 1002,[6] commonly known as the best evidence rule or the original document rule.

We have explained that the best evidence rule is, in reality, a rule of preference for the production of the original of a writing, recording, or photograph when the contents of the item are sought to be proved.[7] As an exception to this rule, rule 1004 provides that under certain circumstances, such as upon a showing that the original has been lost or destroyed, the original is not required to be offered and other evidence of the contents of the document is admissible.

Richter contends that she was unable to produce records evidencing the City's creation of the hole that caused her to fall because the City destroyed the work orders that would have documented it. Thus, Richter argues that

[t]he original work reports are not required and other evidence of the contents of writing, recording, or photograph is admissible since the work reports were under the control of the City . . . and the City . . . knew of the pending lawsuit. . . . The plain meaning of [rule 1004(3)] clearly highlights that Richter's testimony was not insufficient given the

---

[3] *Cerny v. Cedar Bluffs Jr./Sr. Pub. Sch.*, 267 Neb. 958, 679 N.W.2d 198 (2004).

[4] Brief for appellant at 4.

[5] Neb. Rev. Stat. § 27-1004 (Reissue 1995).

[6] Neb. Rev. Stat. § 27-1002 (Reissue 1995).

[7] *State v. Kula*, 260 Neb. 183, 616 N.W.2d 313 (2000).

> actions taken by the City . . . to destroy evidence while this
> lawsuit was pending.[8]

But Richter misunderstands rule 1004. In the first place, Richter did not proffer other evidence of the contents of any work orders. On cross-examination of Ziettlow, Richter adduced evidence that work orders had been destroyed, but no evidence of what those reports actually contained, beyond her speculation that they would have indicated that the City created the hole. Moreover, rules 1002 and 1004 address the admissibility of evidence, not the weight that evidence should be given. Rule 1004 simply addresses when other evidence of the contents of a document may be admitted. Richter does not claim on appeal that evidence was excluded which should have been admitted under the rule, nor did she proffer evidence at trial under rule 1004 that was excluded. In short, rule 1004 is irrelevant to the sufficiency of the evidence Richter adduced at trial.

Instead, to the extent that Richter's argument implicates any recognized legal doctrine, it is the rule of spoliation, or intentional destruction of evidence. Richter's lawyer made a brief reference to the destruction of work orders at the close of trial, after all evidence had been adduced. Now, on appeal, Richter seems to contend that because the City destroyed the work orders she claims would have proved her case, she was entitled to have that fact considered when the evidence was weighed by the trier of fact. But Richter has not established the foundation for such an inference.

It is a general rule that the intentional spoliation or destruction of evidence relevant to a case raises a presumption, or, more properly, an inference, that this evidence would have been unfavorable to the case of the spoliator.[9] Such a presumption or inference arises, however, only where the spoliation or destruction was intentional and indicates fraud and a desire to suppress the truth, and it does not arise where the destruction was a matter of routine with no fraudulent intent.[10]

---

[8] Brief for appellant at 5.

[9] *State v. Davlin*, 263 Neb. 283, 639 N.W.2d 631 (2002).

[10] *Id.*

In the present case, Richter argues that the City destroyed the relevant work orders after she filed her petition. Richter offers nothing in the way of argument as to what, in the record, affirmatively demonstrates that the City destroyed the work orders intentionally or in bad faith. Instead, the record indicates that the work orders were destroyed in the ordinary course of the City's business. Ziettlow testified that as time passes, the City destroys the older work orders. Ziettlow explained that, while she could not give a specific date for when the work orders were destroyed, she "assume[d] it would have been January [2005]" because that was the City's "standard practice."

The City further asserts that at the time the records were destroyed, the City was unaware that Richter would claim that the hole in question had been created by the removal of a traffic sign. The City notes that neither Richter's original claim filed with the City nor her petition allege that the hole was created by the removal of a traffic sign. The City argues that until a few weeks before trial, it assumed that Richter was claiming that the hole was created by the city work crew who had worked on the trees.

In order for Richter to receive the adverse inference drawn from the destruction of evidence, she must show that the City's actions indicated fraud and a desire to suppress the truth.[11] She has failed to do so here. Accordingly, Richter was not entitled to the adverse inference allowed under the rule of spoliation.

### SUFFICIENCY OF EVIDENCE

Richter argues that the district court erred in finding that she failed to prove by a preponderance of the evidence that the City was negligent. In order to be successful on her negligence claim, Richter must establish, among other things, that the City created the condition, knew of the condition, or by the exercise of reasonable care should have discovered or known of the condition.[12]

Although there is conflicting evidence relating to the original location of the traffic sign and the party responsible for the creation of the hole, the district court, as the finder of fact, was entitled to listen to the testimony and make a determination as to

---

[11] See *Trieweiler v. Sears*, 268 Neb. 952, 689 N.W.2d 807 (2004).

[12] See *Aguallo v. City of Scottsbluff*, 267 Neb. 801, 678 N.W.2d 82 (2004).

the credibility of the witnesses and the truth of their testimony. After doing so, the district court concluded that Richter failed to present sufficient evidence that "the City caused the hole or that it knew it was there so it could be repaired in a timely manner."

In reviewing a judgment awarded in a bench trial under the Political Subdivisions Tort Claims Act, it is not the purview of this court to reweigh the evidence.[13] We must consider the evidence in the light most favorable to the successful party.[14] The only evidence offered by Richter was her own testimony that the City created the hole when it removed a traffic sign. She further claims that the City reinstalled the traffic sign at some point after her fall in 1999. Richter, however, was unable to specifically testify as to when the removal or reinstallation of this sign occurred.

The City, however, presented the testimony of Ziettlow, the acting traffic engineer, who explained that there were no work orders for 1998 or 1999 relating to the removal or replacement of traffic signs in that area, as alleged by Richter. Furthermore, Ziettlow testified that it would not have made sense for the City to have originally placed the "No Parking" sign where Richter claimed it had been, because an existing traffic sign was already posted within a few feet of that location. When considering the evidence in the light most favorable to the City, we conclude that the district court's factual determination that Richter failed to present sufficient evidence that the City was negligent was not clearly wrong.

## CONCLUSION

For the foregoing reasons, the judgment of the district court in favor of the City's dismissing Richter's petition is affirmed.

AFFIRMED.

---

[13] *Staley v. City of Omaha*, 271 Neb. 543, 713 N.W.2d 457 (2006).

[14] *Cerny v. Cedar Bluffs Jr./Sr. Pub. Sch., supra* note 3.