DIANE C. SWEEM, APPELLANT, V. AMERICAN FIDELITY LIFE
ASSURANCE COMPANY, A CORPORATION, APPELLEE.

739 N.W.2d 442

Filed October 5, 2007. No. S-06-870.

Richard J. Schicker for appellant.

William M. Lamson, Jr., and Craig F. Martin, of Lamson, Dugan & Murray, L.L.P., for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

American Fidelity Life Assurance Company (American Fidelity) discontinued benefits it had been paying to Diane C. Sweem under a group disability income policy, based upon its determination that Sweem was employable in some capacity

and therefore no longer totally disabled under the terms of the policy. Sweem, contending that she is still totally disabled and unable to work, brought this action for benefits under the policy and other relief based on multiple claims designated as separate "causes of action." The district court for Douglas County entered summary judgment in favor of American Fidelity, and Sweem perfected this appeal. We conclude that there are genuine issues of material fact which preclude summary judgment on Sweem's breach of contract claim, and therefore reverse, and remand for further proceedings. We affirm the judgment of the district court with respect to Sweem's remaining claims.

## BACKGROUND

While employed as a teacher for the Fort Calhoun Public School District, Sweem enrolled in a group long-term disability income insurance policy offered through the school district and underwritten by American Fidelity. The policy included the following provisions:

> 1.09 "Total Disability" (or Totally Disabled) for the first twelve (12) months of disability means that the Insured is disabled and completely unable to do each and every duty of his employment. After that, "Total Disability" means the Insured is disabled and completely unable to engage in any occupation for wage or profit for which he is reasonably qualified by training, education, or experience.
>
> . . . .
>
> 3.01 Monthly Disability Benefits will be paid if an Insured is Totally Disabled as defined in Paragraph 1.09. . . . Benefits will be paid for each month Total Disability continues beyond the Elimination Period. No such benefits will be paid beyond the Maximum Disability Period stated in the Schedule [of Benefits].

The "twelve (12) months of disability" referred to in paragraph 1.09 was subsequently amended to "sixty (60) months." The maximum disability period is defined in the policy as "To age 65 or 5 years, whichever is greater, but not beyond age 70." Sweem was born on May 23, 1957.

In 1990, Sweem was injured in an accident unrelated to her work. She sought treatment from several health care providers,

including Dr. Michael McDermott, an oral and maxillofacial surgeon. McDermott examined Sweem and determined that she suffered from muscle spasms and a displaced disk in the temporomandibular joint of her jaw. McDermott initially recommended a course of conservative treatment and outpatient arthroscopic surgery. When this failed to provide satisfactory relief, McDermott performed open joint surgery. Sweem subsequently underwent additional surgical procedures.

In May 1992, Sweem filed a claim for disability benefits under the American Fidelity policy. On the initial claim form, Sweem identified only McDermott as her treating physician. McDermott completed the attending physician's portion of the claim form. Responding to the question of whether Sweem was "continuously totally disabled," McDermott indicated that she was unable to work from April 3, 1992, until "further notice." In July, American Fidelity approved Sweem's claim and began paying disability income benefits as of April 8.

Also in July 1992, Sweem completed a continuing disability benefits claim form provided by American Fidelity. In the attending physician's portion of that form, McDermott indicated that Sweem was not "totally disabled." However, he underlined the word "totally" on the form and below it wrote "partial yes." In August, McDermott completed another attending physician's statement form at the request of American Fidelity. In responding to the question of whether Sweem was "totally disabled," McDermott marked "Yes" but wrote "partially."

As a condition of receiving benefits, Sweem continued to complete continuing disability benefits forms as submitted to her by American Fidelity. McDermott periodically submitted an attending physician's statement on a form supplied by American Fidelity. On a form dated December 21, 1992, McDermott gave an affirmative response to the question whether Sweem was totally disabled for her regular occupation, but indicated that she was not totally disabled "for any occupation." McDermott responded similarly to these questions on subsequent continuing disability claim forms.

In 2001, American Fidelity began to question Sweem's eligibility for disability benefits. In October 2001, American Fidelity asked McDermott to complete a physical capacities

evaluation of Sweem on a form which it provided. On that form, McDermott indicated that in "an 8 hour workday," Sweem could sit for 7 hours, stand for 6 hours, and walk for 5 hours. McDermott also noted that Sweem could lift and carry some amount of weight and was, generally, not significantly restricted from other physical activities. In July 2002, an American Fidelity case manager wrote a letter to McDermott, asking, "[D]o you agree that . . . Sweem can return to work in another occupation?" McDermott gave an affirmative response, subject to the limitation that she was not to lift more than 25 pounds overhead.

In August 2002, American Fidelity commissioned a vocational evaluation and skills assessment of Sweem. The vocational consultant concluded that based on Sweem's education and experience and McDermott's evaluation, she had the "physical ability to resume employment in a position less physically demanding than her previous job." In September, the same consultant compiled a labor market survey in which she determined that there were nonteaching employment opportunities for Sweem within the Omaha, Nebraska, area. American Fidelity terminated Sweem's disability benefits on November 13, 2002.

Sweem commenced this action. In her operative amended complaint, she sought recovery based upon theories of breach of contract, bad faith, and intentional and negligent infliction of emotional distress. American Fidelity answered, denying Sweem's allegations with respect to liability and asserting several affirmative defenses.

American Fidelity then moved for summary judgment. The district court conducted a hearing at which it received evidence, including McDermott's deposition and affidavits of an American Fidelity employee and attached portions of American Fidelity's claim file pertaining to Sweem. In opposition to the motion, Sweem offered her own affidavit and deposition, another deposition given by McDermott, and the deposition of the American Fidelity employee. This evidence was received without objection. Sweem also offered the affidavit of Jane Yaffe-Rowell, to which was attached Yaffe-Rowell's employability assessment report pertaining to Sweem dated March 21, 2006, signed by her and Karen Stricklett, president of Stricklett & Associates,

Inc. American Fidelity asserted foundational and hearsay objections to this evidence. The court overruled the objections and received the evidence, but indicated that it would not consider any hearsay contained therein. In her report, Yaffe-Rowell, a rehabilitation consultant associated with Stricklett & Associates, stated that based upon the employability assessment which she performed in March, it was her opinion "with a reasonable degree of vocational certainty" that from November 13, 2002, to the present, Sweem was physically unable to perform the requirements of her previous work "or any other work that exists in the local or national economy."

In an order granting American Fidelity's motion for summary judgment and dismissing Sweem's complaint, the district court concluded:

> At the time the benefits were terminated by [American Fidelity], the only reasonable evidence available to [it] was the evidence previously considered on the initial Motion for Summary Judgment, but this did not include the March 21, 2006 Employability Assessment done by [Sweem's rehabilitation consultants]. However, that assessment is irrelevant to the issues raised by [Sweem] in the Second Amended Complaint as it only became available to [American Fidelity] three [and] one-half years after the original benefits were terminated. Therefore, [that evidence] cannot constitute a basis for a determination that [American Fidelity] on November 13, 2002, breached the contract with [Sweem] or that the termination was done in bad faith or in such a way as it negligently or intentionally inflicted emotional distress upon . . . Sweem. The evidence upon which the termination of benefits was based left no reasonable issue as to whether or not [American Fidelity] should have terminated them.

Sweem perfected this appeal, which we moved to our docket on our own motion pursuant to our authority to regulate the caseloads of the appellate courts.[1]

---

[1] See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

## ASSIGNMENTS OF ERROR

Sweem assigns, restated and reordered, that the district court erred (1) in failing to consider the report prepared by Sweem's rehabilitation consultants, (2) in finding that the insurance policy limited the time in which Sweem could submit evidence of her continued disability to American Fidelity after it denied benefits, and (3) in finding that no genuine issue of material fact existed on whether Sweem was totally disabled.

## STANDARD OF REVIEW

■■■ Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[2] In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence.[3]

## ANALYSIS

### BREACH OF CONTRACT CLAIM

■■■ An insurance policy is a contract, and its terms provide the scope of the policy's coverage.[4] Sweem's claim that American Fidelity breached its contract by discontinuing payment of disability benefits due under the policy rests upon a single question of fact: whether she was "totally disabled" as defined by the policy when American Fidelity stopped paying her disability benefits in November 2002. Because more than 60 months had elapsed from the commencement of disability, Sweem would be considered totally disabled under the policy if she were "completely unable to engage in any occupation for wage or profit for which [s]he is reasonably qualified by training, education, or experience."

---

[2] *Stevenson v. Wright*, 273 Neb. 789, 733 N.W.2d 559 (2007).

[3] *Id.*

[4] *Sayah v. Metropolitan Prop. & Cas. Ins. Co.*, 273 Neb. 744, 733 N.W.2d 192 (2007).

 We have often noted that summary judgment pro-
ceedings do not resolve factual issues, but instead determine
whether there is a material issue of fact in dispute.[5] Where the
facts are undisputed or are such that reasonable minds can draw
but one conclusion therefrom, it is the duty of the trial court to
decide the question as a matter of law rather than submit it to
the jury for determination.[6] But where reasonable minds differ
as to whether an inference supporting the ultimate conclusion
can be drawn, summary judgment should not be granted.[7]

As the party moving for summary judgment, American
Fidelity was required to produce enough evidence to dem-
onstrate that it was entitled to judgment if the evidence were
uncontroverted at trial.[8] This required a showing that Sweem
was able "to engage in any occupation for wage or profit for
which [s]he is reasonably qualified by training, education, or
experience," and therefore not "totally disabled" as defined by
the policy. American Fidelity met this prima facie burden by
offering McDermott's statements, indicating that Sweem was
not totally disabled "for any occupation," and the vocational
evaluation and labor market survey, indicating that Sweem was
physically able to work in various available positions which
were less physically demanding than her former position.

The burden then shifted to Sweem to produce evidence show-
ing the existence of a genuine issue of material fact that would
prevent judgment as a matter of law.[9] She offered her own affida-
vit in which she stated that she suffered from degenerative bone
and joint disease, that she was unable to have a conversation for
more than one-half hour without her jaw's locking and severe

---

[5] *Strong v. Omaha Constr. Indus. Pension Plan*, 270 Neb. 1, 701 N.W.2d
320 (2005).

[6] *Bates v. Design of the Times, Inc.*, 261 Neb. 332, 622 N.W.2d 684 (2001);
*Fraternal Order of Police v. County of Douglas*, 259 Neb. 822, 612 N.W.2d
483 (2000).

[7] *Riesen v. Irwin Indus. Tool Co.*, 272 Neb. 41, 717 N.W.2d 907 (2006);
*Sherrets, Smith v. MJ Optical, Inc.*, 259 Neb. 424, 610 N.W.2d 413 (2000).

[8] *Marksmeier v. McGregor Corp.*, 272 Neb. 401, 722 N.W.2d 65 (2006);
*NEBCO, Inc. v. Adams*, 270 Neb. 484, 704 N.W.2d 777 (2005).

[9] *Id.*

pain in her jaw, and that she was unable to leave her home for more than 1 hour at a time. She stated that she was "not able to work at any employment." In her deposition, Sweem testified that she continues to have muscle spasms and "lock ups" in her jaw and is unable to blink one eye. She testified that she was always in some pain and can write or type for only short periods of time. She further testified that she sleeps only 3 to 4 hours at night and usually takes naps during the day to make up for lost sleep. She testified that she had never considered applying for a sedentary job because no physician had specifically told her that she could perform such work.

Sweem also offered a deposition of McDermott in which he described the injury to Sweem's temporomandibular joint as "one of the more severe types of injuries that I've seen in almost 30 years." He testified that while he had completed the attending physician's statements submitted to American Fidelity to the best of his ability, he had not determined whether Sweem could perform any particular job and did not feel qualified to make such determinations.

Sweem also offered the affidavit of rehabilitation consultant Yaffe-Rowell and the attached employability assessment dated March 21, 2006, signed by Yaffe-Rowell and Stricklett. As noted, Yaffe-Rowell concluded "with a reasonable degree of vocational certainty" that Sweem "continues to be incapable of performing any of her previous work or any other work that exists in the local or national economy." Although it received this exhibit over foundational and hearsay objections, the district court subsequently disregarded it as "irrelevant" because it was not available to American Fidelity at the time it discontinued Sweem's disability benefits. We agree with Sweem that this was error. While the fact that American Fidelity did not have this document when it discontinued Sweem's benefits may weigh against Sweem's claims that it acted negligently or in bad faith in doing so, it is clearly relevant to the dispositive factual issue in Sweem's breach of contract claim, i.e., whether she remained totally disabled, as defined in the policy, at the time of discontinuation of her benefits.

In urging that the district court properly disregarded this evidence, American Fidelity argues that Sweem "closed the

administrative record when she chose to file suit."[10] It argues that although this is not a case arising under the Employee Retirement Income Security Act of 1974 (ERISA),[11] ERISA principles limiting or prohibiting consideration of evidence which was not considered by a plan administrator are "logically applicable."[12] American Fidelity further argues that Sweem's counsel was invited to submit additional evidence after disability benefits were discontinued, but chose not to do so and filed suit instead.

We find no merit in these arguments. We discern no good reason to apply ERISA principles to this common-law action to recover benefits claimed due under an insurance policy, and American Fidelity directs us to no other state court decision which has done so. There is no claim that Sweem failed to comply with the notice of claim or proof of loss provisions of the policy. Indeed, based upon the information Sweem and her physicians provided, American Fidelity paid disability benefits for more than 10 years. It then discontinued such benefits, based in part upon the opinion of a vocational rehabilitation expert whom it retained. Sweem did not accept this determination, filed this action, and retained an expert whose opinion differed from that of American Fidelity's expert. We find nothing in the insurance policy or the applicable law which precluded her from doing so. The Yaffe-Rowell affidavit and report should have been considered by the trial court with respect to Sweem's breach of contract claim. That report, together with Sweem's affidavit and deposition testimony, established the existence of a genuine issue of material fact as to whether Sweem was totally disabled as defined by the policy when American Fidelity discontinued its payment of benefits. In circumstances such as these, where there is conflicting evidence on the question of whether an insured is "disabled" within the meaning of an insurance policy, we have held that neither party is entitled to summary judgment.[13] The

---

[10] Brief for appellee at 9.

[11] See 29 U.S.C. §§ 1001 to 1461 (2000 & Supp. IV 2004).

[12] Brief for appellee at 9.

[13] *Knudsen v. Mutual of Omaha Ins. Co.*, 257 Neb. 912, 601 N.W.2d 725 (1999).

district court erred in entering summary judgment for American Fidelity on this claim.

## OTHER CLAIMS

The entry of summary judgment also resulted in dismissal of Sweem's claims based upon alleged bad faith, as well as negligent and intentional infliction of emotional distress. Sweem did not assign or argue error with respect to the dismissal of these claims. Accordingly, we find no error in the dismissal of these claims.

## CONCLUSION

Because Sweem does not raise any issue on appeal with respect to the dismissal of her claims based upon bad faith, negligent infliction of emotional distress, and intentional infliction of emotional distress, we affirm the entry of summary judgment as to those claims. However, for the reasons discussed, we conclude that the district court erred in entering summary judgment in favor of American Fidelity with respect to Sweem's breach of contract claim. We therefore remand that cause to the district court for further proceedings consistent with this opinion.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.