753 N.W.2d 321 (2008)
276 Neb. 143
Lynn R. McNEEL, Appellant and Cross-Appellee,
v.
UNION PACIFIC RAILROAD COMPANY, A Corporation, Appellee and Cross-Appellant.
No. S-07-155.
Supreme Court of Nebraska.
July 18, 2008.
*325 Fredric A. Bremseth, of Bremseth Law Firm, P.C., Minnetonka, MN, and Terrance O. Waite and Keith A. Harvat, of Waite, McWha & Harvat, North Platte, for appellant.
William M. Lamson, Jr., and Anastasia Wagner, of Lamson, Dugan & Murray, L.L.P., Omaha, for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
STEPHAN, J.
Lynn R. McNeel brought this action under the Federal Employers' Liability Act (FELA),[1] alleging that he was injured when he inhaled fumes while employed as a conductor by Union Pacific Railroad Company (Union Pacific). The district court for Lincoln County granted Union Pacific's Daubert/Schafersman[2] motion to exclude McNeel's expert witnesses from testifying and subsequently entered summary judgment in favor of Union Pacific, from which McNeel appeals. We find no error and affirm.

BACKGROUND
On March 12, 2001, McNeel was working as a conductor on a freight train en route from North Platte, Nebraska, to Cheyenne, Wyoming. He was seated on the left side of the locomotive cab, and engineer LaVerne Golden was seated on the right side. McNeel noticed nothing unusual as the train left North Platte and proceeded through Hershey and Sutherland, Nebraska. As they passed another *326 train approximately 23 miles outside of Ogallala, Nebraska, McNeel noticed what he characterized as "the smell of sticking brakes" which persisted for a few seconds. McNeel opened the side window of the locomotive unit to check both his train and the passing train for smoke, but saw none. There was never any smoke in the locomotive unit in which McNeel was working.
A short time later, McNeel detected "a light smell" which persisted for about 15 seconds. He described it as "more of a putrid smell" which was "different than anything I ever smelled." He detected the odor again several miles later, again for only a few seconds. A few minutes later, McNeel detected the odor for the third time and asked Golden, the engineer, if he could smell it. Golden replied that he could not. But then Golden came over to the side of the unit where McNeel was sitting and confirmed that he could smell the odor. At that point, either McNeel or Golden contacted the dispatcher to advise that they needed to stop the train to investigate the odor. They eventually stopped the train at a pass on the west end of Ogallala and were transported by ambulance to a local hospital for evaluation.
McNeel alleged that the inhalation of these unidentified fumes caused him to suffer "headaches, nausea, and injury to his respiratory system, dizziness and other injuries not yet diagnosed." He has been seen by a number of health care providers, including William J. Rea, M.D., a cardiovascular surgeon who currently practices in the field of environmental medicine; Theodore R. Simon, M.D., a specialist in nuclear medicine; and Nancy Didriksen, Ph.D, a psychologist. These three providers submitted affidavits and depositions discussing McNeel's symptoms, condition, and treatment, and were the subject of the Daubert/Schafersman motion.
Rea diagnosed McNeel as suffering from toxic encephalopathy caused by his inhalation of an unspecified toxin while employed by Union Pacific on March 12, 2001. Rea described McNeel's symptoms as including "memory loss, confusion, brain fogg [sic] and imbalance." In reaching his diagnosis, Rea relied on a "positive [single photon emission computed tomographic (SPECT)] Scan" performed by Simon, a "positive" result from "pupillography" testing of the autonomic nervous system, and "positive thermography." Rea could not identify the substance responsible for McNeel's symptoms and diagnosis. Simon testified that SPECT scans are widely used and accepted in the diagnosis of toxic encephalopathy, when used in conjunction with other examination techniques.
Didriksen gave "Diagnostic Impressions" of "Cognitive Disorder Not Otherwise Specified" and "Adjustment Disorder with Mixed Anxiety and Depressed Mood" based upon her work with McNeel. Her tests revealed, inter alia, that McNeel's information processing speed was at the bottom of the average range and that his memory scores were "borderline and low average." Comparing her test results with previous results obtained by another doctor, Didriksen explained that her test results indicated a "significant difference" in McNeel's condition. Didriksen's hypothesis is that McNeel experienced a toxic injury that led to declining cortical function over time.
Union Pacific moved to exclude the testimony of Didriksen, Rea, and Simon under Daubert/Schafersman. In support of its motion, it submitted affidavits and depositions from its own expert witnesses. These witnesses opined that the scientific techniques employed by McNeel's experts, specifically the SPECT scans performed by Simon and the psychological tests performed by Didriksen, were not validated, *327 peer reviewed, or generally accepted by the scientific community for the purposes employed by McNeel's experts. The district court concluded that there was adequate foundation for the opinions of McNeel's experts, but nonetheless excluded the opinions as "not relevant, not linked by any evidence to a causative factor, and, therefore, inadmissible."
Union Pacific then moved for summary judgment. It offered and the court accepted the opinions of two expert witnesses who opined that there was no credible evidence causally linking McNeel's symptoms to his alleged exposure. The court determined that this evidence met Union Pacific's initial burden as the party moving for summary judgment, thus shifting the burden to McNeel to show that there remained a genuine issue of material fact. The court concluded that medical records offered by McNeel did not meet this burden, and therefore granted the motion for summary judgment. McNeel perfected a timely appeal, and we granted Union Pacific's petition to bypass the Court of Appeals.

ASSIGNMENTS OF ERROR
McNeel assigns, restated, that the district court erred in (1) excluding the proposed testimony of his expert witnesses, (2) granting Union Pacific's motion for summary judgment because there were genuine issues of material fact as to whether his injuries were caused in whole or in part by exposure to toxic gasses while employed by Union Pacific, and (3) granting Union Pacific's motion for summary judgment because Union Pacific failed to collect and preserve certain evidence.
Union Pacific cross-appeals and assigns that the district court erred in finding the opinions of Didriksen, Simon, and Rea to be scientifically reliable.

STANDARD OF REVIEW
[1] Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose no genuine issue regarding any material fact or the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[3]
[2] In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence.[4]
[3,4] In proceedings where the Nebraska rules of evidence apply, the admission of evidence is controlled by rule and not by judicial discretion, except where judicial discretion is a factor involved in assessing admissibility.[5] The admission of expert testimony is ordinarily within the trial court's discretion, and its ruling will be upheld absent an abuse of discretion.[6]
[5] An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.[7]

*328 ANALYSIS

FELA CAUSATION STANDARD
[6, 7] McNeel argues that in granting the motion for summary judgment, the district court did not appreciate the "lower evidentiary standard" applicable to a FELA plaintiff's burden of proof.[8] Federal law governs substantive issues in FELA claims litigated in state courts pursuant to concurrent jurisdiction.[9]
[8, 9] Under FELA, railroad companies are liable in damages to any employee who suffers injury during the course of employment when such injury results in whole or in part due to the railroad's negligence.[10] This court has stated that to recover under FELA, an employee must prove the employer's negligence and that the alleged negligence is a proximate cause of the employee's injury.[11] We note that FELA causation standards apply where, as here, liability is premised in whole or in part on an alleged violation of the Locomotive Inspection Act, formerly known as the Boiler Inspection Acts.[12]
McNeel argues that proximate causation under FELA is subject to a different, more lenient standard than under the common law. Indeed, there are federal cases which would appear to support his argument.[13] Most are based on language in Rogers v. Missouri Pacific R. Co.,[14] in which the U.S. Supreme Court stated: "Under [FELA] the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." Based upon this language, some courts have stated that there is a "relaxed standard" for causation in FELA cases.[15] Other courts conclude from Rogers that the plaintiff in a FELA case "carries only a slight burden on causation."[16]
The existence of a "relaxed standard" for proving causation in FELA cases was called into question by the U.S. Supreme Court's decision in Norfolk Southern Ry. Co. v. Sorrell.[17] In that case, the Court held that in a FELA action, the same causation standard applies to the employer's negligence and the employee's contributory negligence, rejecting a contrary approach employed by Missouri state courts. In reaching this conclusion, the Court noted that the "fact that the common law applied the same causation standard to defendant and plaintiff negligence, and *329 FELA did not expressly depart from that approach, is strong evidence against Missouri's disparate standards."[18] A concurring opinion noted that despite its interpretation by some courts, Rogers "did not address, much less alter, existing law governing the degree of causation necessary for redressing negligence as the cause of negligently inflicted harm; the case merely instructed courts how to proceed when there are multiple cognizable causes of an injury."[19] Another concurrence, however, noted that the Court's opinion "leaves in place precedent solidly establishing that the causation standard in FELA actions is more `relaxed' than in tort litigation generally."[20] Although the Court held that the causation standard for negligence and contributory negligence under FELA is the same, it did not articulate what the proper standard should be inasmuch as it did not grant certiorari on that issue.
[10] But even courts which have recognized a "relaxed standard" of causation have nevertheless held that a FELA plaintiff bears the burden of presenting evidence from which a jury could conclude the existence of a probable or likely causal relationship, as opposed to a merely possible one.[21] In Chapman v. Union Pacific Railroad, we cited the aforementioned language from Rogers but interpreted other U.S. Supreme Court precedent as requiring that in a FELA case, "a court cannot allow a jury to speculate concerning the cause of an employee's injuries and must withhold or withdraw the employee's case from the jury unless evidence provides a basis for the reasonable inference that the employee's injury was caused by the employer's negligence."[22] We conclude that this principle governs the causation issue here.
In common-law negligence cases where symptoms of an injury are subjective, Nebraska law requires medical testimony.[23] Federal courts apply the same principle in FELA cases where injury is alleged to have occurred as a result of exposure to a toxic substance.[24] In this case, expert testimony was necessary to establish the basis for an inference that McNeel's injuries were caused by the inhalation of fumes attributable to some negligent act or omission on the part of Union Pacific.

EXCLUSION OF MCNEEL'S EXPERT WITNESSES
[11, 12] Our evidence rule governing expert opinion[25] is similar to the federal rule,[26] and in Schafersman v. Agland Coop,[27] we held prospectively that trial courts would be required to evaluate the admissibility of expert opinion testimony under the analytical framework first established by the U.S. Supreme Court in Daubert v. Merrell Dow Pharmaceuticals, *330 Inc.[28] As a principle of evidence, Daubert/Schafersman applies in a FELA case in the same manner as in other cases. As one federal court has explained in a FELA case involving alleged injuries from exposure to workplace chemicals:
The standard of causation under FELA and the standards for admission of expert testimony under the Federal Rules of Evidence are distinct issues and do not affect one another. . . . It is true that under FELA the quantum of evidence sufficient to present a jury question of causation is less than it is in a common law tort action. . . . This does not mean, however, that FELA plaintiffs need make no showing of causation. Nor does it mean that in FELA cases courts must allow expert testimony that in other contexts would be inadmissible. It means only that in FELA cases the negligence of the defendant "need not be the sole cause or whole cause" of the plaintiff's injuries. . . . FELA plaintiffs still must demonstrate some causal connection between a defendant's negligence and their injuries.[29]
Other circuits have reached the same conclusion,[30] and the Nebraska Court of Appeals has recently applied the Daubert/Schafersman analysis in a FELA case involving an injury allegedly caused by exposure to diesel exhaust fumes.[31]
[13-16] Under the Daubert/Schafersman analytical framework, when a court is faced with a decision regarding the admissibility of expert opinion evidence, the trial judge must determine at the outset whether the expert is proposing to testify to (1) scientific, technical, or other specialized knowledge that (2) will assist the trier of fact to understand or determine a fact in issue.[32] This entails a preliminary assessment whether the reasoning or methodology underlying the testimony is valid and whether that reasoning or methodology properly can be applied to the facts in issue.[33] The first portion of the analysis "establishes a standard of evidentiary reliability."[34] The second inquiry, sometimes referred to as "`fit,'" assesses whether the scientific evidence will assist the trier of fact to understand the evidence or to determine a fact in issue by providing "a valid scientific connection to the pertinent inquiry as a precondition to admissibility."[35] "`Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.'"[36] "`Fit' is not always obvious, and scientific validity *331 for one purpose is not necessarily scientific validity for other, unrelated purposes."[37]
After examining the affidavits of McNeel's proffered experts Didriksen, Simon, and Rea, and the affidavits submitted by Union Pacific's experts challenging the scientific reliability of their opinions, the district court concluded that "while ... there is foundation for their `shaky but admissible evidence', their opinions are not relevant, not linked by any evidence to a causative factor, and, therefore, inadmissible." McNeel assigns error to the determination of inadmissibility. In its cross-appeal, Union Pacific challenges the court's apparent determination of scientific reliability with respect to the experts' opinions.
The cross-appeal raises a significant issue. A number of courts have determined that toxic encephalopathy, also known as multiple chemical sensitivity or idiopathic environmental intolerance, is a controversial diagnosis unsupported by sound scientific reasoning or methodology.[38] Some courts have specifically rejected or discredited the opinions of Rea and Didriksen on this subject.[39]
However, we need not reach the issue presented by the cross-appeal because we conclude that the district court correctly concluded that even if considered scientifically reliable, the opinions of McNeel's experts did not "fit" the issues of this case because they did not identify any specific causative agent for the diagnosis of toxic encephalopathy.
[17] Generally, "`"[s]cientific knowledge of the harmful level of exposure to a chemical plus knowledge that plaintiff was exposed to such quantities are minimal facts necessary to sustain the plaintiff's burden in a toxic tort case."'"[40] Because McNeel's experts could not identify any toxic substance which caused the symptoms they diagnosed as toxic encephalopathy, their reasoning on causation was reduced to nothing more than post hoc, ergo propter hoc, which, as we said in Schafersman, "cannot be said to be helpful to the trier of fact under Neb. Evid. R. 702, even absent the application of a more stringent Frye[41] or Daubert analysis."[42] Didriksen admitted that this was her reasoning process. Rea testified that because McNeel experienced symptoms during and after his exposure to the unidentified fumes, the exposure caused the symptoms.
At least one court has specifically held in a FELA case that a causation opinion based solely on a temporal relationship is not derived from the scientific method and is therefore insufficient to satisfy the requirements of rule 702.[43] In Carlson v. *332 Okerstrom,[44] we noted that when a person develops symptoms after encountering an agent which is known to be capable of causing those symptoms, courts have been more willing to admit expert testimony relying on the temporal connection between the exposure and the onset of symptoms. But here, no one can identify to which "agent," if any, McNeel was exposed on the date of his alleged injury.
[18] Under the Daubert/Schafersman analysis, expert testimony lacks "`fit' when `a large analytical leap must be made between the facts and the opinion.'"[45] That is the case here. Assuming without deciding that the diagnosis of toxic encephalopathy was the product of scientifically reliable methodology, it is simply too great an analytical leap to conclude that it was caused by some act or omission on the part of Union Pacific, given that the experts could not identify any toxic agent. Due to this lack of "fit," the opinions of McNeel's experts would not have assisted the trier of fact in understanding the evidence or determining a fact in issue, and the district court did not abuse its discretion in determining that they were inadmissible.

COLLECTION AND PRESERVATION OF EVIDENCE
[19] McNeel assigns that the district court should not have entered summary judgment, because Union Pacific "failed to collect and preserve evidence." We find no motion or pleading in the record raising this issue. In its brief, Union Pacific states that the issue was raised in a reply brief filed by McNeel in response to its motion in limine. In the district court's order on the motion in limine, it stated that McNeel claimed that Union Pacific "destroyed or secreted evidence that would have shown the specific chemical agent and its source," but determined that there was no evidence to support the claim.
[20-23] Spoliation is the intentional destruction of evidence.[46] It is a general rule that the intentional spoliation or destruction of evidence relevant to a case raises an inference that this evidence would have been unfavorable to the case of the spoliator.[47] The rationale of the rule is that intentional destruction amounts to an admission by conduct of the weakness of one's own case; thus, only intentional destruction supports the rationale of the rule.[48] The inference does not arise where destruction was a matter of routine with no fraudulent intent[49] because the adverse inference drawn from the destruction of evidence is predicated on bad conduct.[50] In Nebraska, the proper remedy for spoliation of evidence is an adverse inference instruction.[51] There is nothing in the record to support a claim that Union Pacific intentionally destroyed any evidence relevant to this case.
[24] McNeel also argues that under Trieweiler v. Sears,[52] Union Pacific had an affirmative duty to preserve all relevant evidence. Trieweiler was a derivative action brought by a minority shareholder, *333 alleging breach of fiduciary duties. The district court had made a finding that lost corporate financial records resulted in an adverse inference as to the party who had a fiduciary duty to maintain the records. We analogized the conduct in Trieweiler to spoliation, but noted it was not a case of spoliation because the record did not clearly establish that evidence had been intentionally destroyed by the majority shareholder. We noted that some principles of the rule of spoliation supported the district court's reasoning. Trieweiler has no application to this case, in that Union Pacific owed no general fiduciary duty to McNeel to maintain records which, as far as we can determine from the record, had not been requested by McNeel or his counsel.

SUMMARY JUDGMENT
[25,26] As the party moving for summary judgment, Union Pacific was required to produce enough evidence to demonstrate that it was entitled to judgment if that evidence was uncontroverted at trial. The burden then shifted to McNeel to produce evidence showing the existence of a genuine issue of material fact that would prevent judgment as a matter of law.[53]
Union Pacific met its initial burden by producing the affidavit of a licensed psychologist who stated that McNeel's symptoms "cannot be causally attributed to any alleged toxic exposure by any generally accepted or scientifically validated method" and the affidavit of a physician who stated that "there is no credible psychiatric, medical, or scientific evidence that ... McNeel suffers from toxic encephalopathy, any mental disorder, any cognitive impairment, or any other medical or psychiatric consequence as a result of any alleged exposure to fumes in the course of employment with ... Union Pacific."
The only evidence offered by McNeel in opposition to the motion was an affidavit of his attorney which identified various medical records attached to the affidavit. The district court determined that none of the records constituted expert medical testimony to show a link between the inhalation of fumes and the injuries allegedly suffered by McNeel. We agree. There was no genuine issue of fact as to the element of causation, and Union Pacific was entitled to judgment as a matter of law.

CONCLUSION
For the reasons discussed, we conclude that (1) the district court did not abuse its discretion in excluding the testimony of McNeel's expert witness as under Daubert/Schafersman, (2) the record does not support McNeel's spoliation of evidence claim, and (3) the district court did not err in entering summary judgment in favor of Union Pacific. Accordingly, we affirm.
AFFIRMED.
NOTES
[1] 45 U.S.C. §§ 51 through 60 (2000).
[2] Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); Schafersman v. Agland Coop, 262 Neb. 215, 631 N.W.2d 862 (2001).
[3] Erickson v. U-Haul Internat., 274 Neb. 236, 738 N.W.2d 453 (2007).
[4] Wolski v. Wandel, 275 Neb. 266, 746 N.W.2d 143 (2008).
[5] Epp v. Lauby, 271 Neb. 640, 715 N.W.2d 501 (2006). See State v. Kuehn, 273 Neb. 219, 728 N.W.2d 589 (2007).
[6] In re Trust of Rosenberg, 273 Neb. 59, 727 N.W.2d 430 (2007).
[7] Epp v. Lauby, supra note 5.
[8] Brief for appellant at 12.
[9] See, Monaghan v. Union Pacific RR. Co., 242 Neb. 720, 496 N.W.2d 895 (1993); Chapman v. Union Pacific Railroad, 237 Neb. 617, 467 N.W.2d 388 (1991).
[10] See 45 U.S.C. § 51.
[11] Chapman v. Union Pacific Railroad, supra note 9.
[12] 49 U.S.C. §§ 20102, 20701 to 20703, 21302, and 21304 (2000) (formerly 45 U.S.C. §§ 22 through 34 (1988 & Supp. V 1993)). See, Green v. River Terminal Ry. Co., 763 F.2d 805 (6th Cir.1985): Elston v. Union Pacific R. Co., 74 P.3d 478 (Colo.App.2003).
[13] See, e.g., Hardyman v. Norfolk & Western Ry. Co., 243 F.3d 255 (6th Cir.2001); Bowers v. Norfolk Southern Corp., 537 F.Supp.2d 1343 (M.D.Ga.2007).
[14] Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 506, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957).
[15] See, e.g., Hardyman v. Norfolk & Western Ry. Co., supra note 13; Bowers v. Norfolk Southern Corp., supra note 13.
[16] Paul v. Missouri Pacific R. Co., 963 F.2d 1058, 1061 (8th Cir.1992). See Harbin v. Burlington Northern R. Co., 921 F.2d 129 (7th Cir.1990).
[17] Norfolk Southern R. Co. v. Sorrell, 549 U.S. 158, 127 S.Ct. 799, 166 L.Ed.2d 638 (2007).
[18] Id., 127 S.Ct. at 807.
[19] Id., 127 S.Ct. at 809-10 (Souter, J., concurring).
[20] Id., 127 S.Ct. at 812 (Ginsburg, J., concurring in judgment).
[21] Savage v. Union Pacific R. Co., 67 F.Supp.2d 1021 (E.D.Ark.1999); Abraham v. Union Pacific R. Co., 233 S.W.3d 13 (Tex.App. 2007), citing Edmonds v. Illinois Cent. Gulf R. Co., 910 F.2d 1284 (5th Cir. 1990).
[22] Chapman v. Union Pacific Railroad, supra note 9, 237 Neb. at 627, 467 N.W.2d at 395.
[23] Eiting v. Godding, 191 Neb. 88, 214 N.W.2d 241 (1974).
[24] Claar v. Burlington Northern R. Co., 29 F.3d 499 (9th Cir. 1994); Savage v. Union Pacific R. Co., supra note 21; Schmaltz v. Norfolk & Western Ry. Co., 878 F.Supp. 1119 (N.D.Ill.1995).
[25] Neb.Rev.Stat. § 27-702 (Reissue 1995).
[26] Fed.R.Evid. 702.
[27] Schafersman v. Agland Coop, supra note 2.
[28] Daubert v. Merrell Dow Pharmaceuticals, Inc., supra note 2.
[29] Claar v. Burlington Northern R. Co., supra note 24, 29 F.3d at 503 (citations omitted).
[30] Knight v. Kirby Inland Marine Inc., 482 F.3d 347 (5th Cir.2007); Wills v. Amerada Hess Corp., 379 F.3d 32 (2d Cir.2004) (noting expert testimony is necessary to establish causation, even in view of plaintiff's reduced burden to prove causation in Jones Act case); Hardyman v. Norfolk & Western Ry. Co., supra note 13; Diefenbach v. Sheridan Transp., 229 F.3d 27 (1st Cir.2000) (discussing Daubert challenge in a Jones Act case); Summers v. Missouri Pacific R.R. System, 132 F.3d 599 (10th Cir.1997); Hose v. Chicago Northwestern Transp. Co., 70 F.3d 968 (8th Cir.1995).
[31] King v. Burlington Northern Santa Fe Ry. Co., 16 Neb.App. 544, 746 N.W.2d 383 (2008).
[32] See, Daubert v. Merrell Dow Pharmaceuticals, Inc., supra note 2; Schafersman v. Agland Coop, supra note 2.
[33] Id.
[34] Daubert v. Merrell Dow Pharmaceuticals, Inc., supra note 2, 509 U.S. at 590, 113 S.Ct. 2786.
[35] Id., 509 U.S. at 591-92, 113 S.Ct. 2786.
[36] Id., 509 U.S. at 591, 113 S.Ct. 2786. Accord 4 Joseph M. McLauglin, Weinstein's Federal Evidence § 702.02[5] (2d ed.2007).
[37] Daubert v. Merrell Dow Pharmaceuticals, Inc., supra note 2, 509 U.S. at 591, 113 S.Ct. 2786.
[38] See, e.g., Summers v. Missouri Pacific R.R. System, supra note 30; Bradley v. Brown, 42 F.3d 434 (7th Cir. 1994); Brown v. Shalala, 15 F.3d 97 (8th Cir. 1994); Coffey v. County of Hennepin, 23 F.Supp.2d 1081 (D.Minn. 1998); Frank v. State of New York, 972 F.Supp. 130 (N.D.N.Y.1997); Sanderson v. IFF, 950 F.Supp. 981 (C.D.Cal. 1996). But see McDaniel v. CSX Transp., Inc., 955 S.W.2d 257 (Tenn.1997).
[39] Bradley v. Brown, supra note 38; Myhre v. Workers Compensation Bureau, 653 N.W.2d 705 (N.D.2002); Jones v. Ruskin Mfg., 834 So.2d 1126 (La.App.2002).
[40] Savage v. Union Pacific R. Co., supra note 21, 67 F.Supp.2d at 1035, quoting Allen v. Pennsylvania Engineering Corp., 102 F.3d 194 (5th Cir. 1996).
[41] Frye v. United States, 293 F. 1013 (D.C.Cir. 1923).
[42] Schafersman v. Agland Coop, supra note 2, 262 Neb. at 223, 631 N.W.2d at 871.
[43] Schmaltz v. Norfolk & Western Ry. Co., supra note 24.
[44] Carlson v. Okerstrom, 267 Neb. 397, 675 N.W.2d 89 (2004).
[45] Bowers v. Norfolk Southern Corp., supra note 12, 537 F.Supp.2d at 1351.
[46] State v. Davlin, 263 Neb. 283, 639 N.W.2d 631 (2002).
[47] See Richter v. City of Omaha, 273 Neb. 281, 729 N.W.2d 67 (2007).
[48] State v. Davlin, supra note 46.
[49] Richter v. City of Omaha, supra note 47.
[50] State v. Davlin, supra note 46.
[51] Id.
[52] Trieweiler v. Sears, 268 Neb. 952, 689 N.W.2d 807 (2004).
[53] See, Sweem v. American Fidelity Life Assurance Co., 274 Neb. 313, 739 N.W.2d 442 (2007); Neiman v. Tri R Angus, 274 Neb. 252, 739 N.W.2d 182 (2007); Cerny v. Longley, 270 Neb. 706, 708 N.W.2d 219 (2005).