GLENN M. TIMMONS ET AL., APPELLEES, v. SCHOOL DISTRICT OF OMAHA, DOUGLAS COUNTY, NEBRASKA, APPELLANT. CONSOLIDATED WITH SCHOOL DISTRICT OF OMAHA, DOUGLAS COUNTY, NEBRASKA, APPELLANT, v. GLENN M. TIMMONS ET AL., APPELLEES.

114 N. W. 2d 386

Filed March 30, 1962. No. 35117.

*Wm. Ross King,* for appellant.

*Schmid, Snow & Ford, Marvin G. Schmid,* and *William E. Mooney, Jr.,* for appellees.

Heard before CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

SPENCER, J.

This is a condemnation action brought by the School District of Omaha, Douglas County, Nebraska, against Glenn M. Timmons and John L. Bilby, trustees. The appraisers made an award of $38,750. Both the condemner and the condemnees appealed. These appeals were consolidated for trial and appeal. By stipulation, the sole issue tried in the district court was the value of the real estate condemned on March 18, 1960. The jury returned a verdict of $52,500, and the condemner prosecutes this appeal.

For convenience in this appeal, the School District of Omaha, Douglas County, Nebraska, condemner, will

hereinafter be referred to as defendant as it was in the district court, and Glenn M. Timmons and John L. Bilby, trustees, will hereinafter be referred to as the plaintiffs.

The defendant condemned a tract of land in Meadow Lane, an addition to Douglas County on the west side of the city of Omaha, at approximately One Hundred Sixteenth and Leavenworth Streets. Meadow Lane is situated on a tract of about 116 acres which the plaintiffs purchased in 1955 for development and sale as residential lots. The area was engineered for grades, drainage, contours, streets, and utilities, and a preliminary plat was prepared, filed, and approved by the city planning commission of the City of Omaha in April 1955. Thereafter, the plaintiffs proceeded to develop the area by stages. The area between One Hundred Fourteenth Street and the property being condemned was developed in two stages between April 1955 and 1959.

No sanitary sewer was available to Meadow Lane, so plaintiffs constructed an outfall sewer line for a distance of 2 miles to serve the addition, at a cost of $110,000. They spent $20,000 to bring water to the addition, and $2,800 for a gas line. The pavement and all of the utilities, including gas, water, and sanitary and storm sewers, were brought to the edge of the condemned premises. All engineering data on the condemned property, which was to be the third phase of the development, had been fully completed. This particular area, which had a high hill, had been graded and leveled and the lots were laid out. The pavement was brought up to a street which was graded and cut through the condemned area preparatory to paving. The intersection was paved and all the utilities were stubbed in. The grading expense on the condemned portion, which required the removal of 107,000 cubic yards of earth, was $17,000. The area condemned consisted of 7.74348 acres, which was described by the witnesses as the highest and choicest part of the Meadow Lane development. On the tentative

plat, it consisted of 16 large lots, the front footage of which ranged from 120 to 130 feet. These lots were separated by the street referred to above, described on the plat as Arrowridge Road. Even the defendant's witnesses conceded this area to be the most desirable one in the entire Meadow Lane development.

The defendant sets forth seven assignments of error which we will list as they are discussed herein. The first assignment is that the court erred in permitting the plaintiffs to show by indirection the price paid by the defendant for three improved lots adjacent to the property condemned. There is no merit to this assignment. The testimony is as follows: "Q. Calling your attention to the lots that are generally adjacent to the condemned area from the south and going around to the east, are you familiar with the sale prices of those lots? A. Yes, I am. Q. And what is the range of sales prices on those lots? A. About forty-five hundred dollars to six thousand." This testimony went in without objection. Defendant's counsel was then given leave to cross-examine, and the following testimony was adduced: "MR. KING: I just want to ask as to those lots thirteen, fourteen and fifteen, block nine. Those were sold to the School Board, were they not? THE WITNESS: Yes, they were, *second sale*, however, not direct from Meadow Lane." (Italics ours.)

Conceding for the purpose of this opinion the correctness of the principle upon which the defendant relies, we suggest that it cannot be sustained in this case for three reasons: First, the record does not show that the testimony of the witness included the sale prices of the three lots when they were sold to the defendant; second, it was elicited by the defendant itself on cross-examination; and third, the defendant's remedy was a motion to strike the testimony and to instruct the jury to disregard it. See Carlile v. Bentley, 81 Neb. 715, 116 N. W. 772, in which we said: "Where evidence that is not properly admissible has been received in evidence over objections

to a question, but where there is nothing in the form of the question to indicate that the evidence would be inadmissible, the aggrieved party cannot complain, unless he moves to strike out and withdraw from the consideration of the jury the objectionable testimony." No such motion was made. Defendant further complains that its chief witness was cross-examined in such manner as to get this information to the jury by indirection. We find nothing improper in the cross-examination of the defendant's expert witness. It is apparent to us that he carefully refrained from testifying as to the price the defendant paid for any of the three lots in question.

Defendant's second assignment of error complains of the exclusion of the sale price of a tract of land described as Cornhusker No. 1, which one of defendant's expert witnesses considered as a comparable sale. This property, located at One Hundred Thirty-second and Dodge Streets, consisted of 88.73 acres, purchased June 1, 1959, for subdivision purposes. It was located 1⅞ miles northwest of the land condemned. It was a farm at the time of purchase. No grading or engineering had been done. None of it was platted. There was no showing as to the availability of sanitary and storm sewers in the vicinity of the property. There was no showing of improvements anywhere on the tract, as in Meadow Lane. In Langdon v. Loup River Public Power Dist., 142 Neb. 859, 8 N. W. 2d 201, we held: "In condemnation where the value of real estate is in issue, evidence of particular sales of other land may not be introduced as independent proof on the question of value, unless foundation is laid indicating that prices paid represented the market or going value of such land, that they were made at or about the time of the taking by condemnation and that the land so sold was substantially similar in location and quality to that condemned."

The court sustained the plaintiffs' objection to the offered testimony of the sale price for the reason that no comparison of similarity had been made. The defendant

then made an offer to prove the land sold for $2,986 per acre, but did not attempt to ask additional foundational questions to show the property to be sufficiently similar for comparison purposes. Objection was properly sustained.

Defendant's witnesses were permitted to testify as to nine other sales in the west Omaha area which they considered to be comparable where the sale price per acre ranged from $1,750 to $3,250.

The third assignment of error complained of by the defendant concerned the exclusion of the sale price of a tract of land at One Hundred Twentieth and Pacific Streets, known as Pinewood, which contained 79.2 acres and was ½ mile from the subject property. This land was purchased for development purposes December 30, 1958. Objection was made to the testimony as to the sale price of the tract in 1958, on the ground that during the period between its purchase and the condemnation of plaintiffs' land, this tract was developed and was selling as lots and not as farm land. The court in sustaining the objection said: "I think the fair comparison to be made between these two properties would be the condition of both of them at the time of the condemnation." There is no showing in the record that the market value of the property had not changed between December 30, 1958, and March 18, 1960. It seems apparent that a change had occurred. In any event, this is a matter within the discretion of the trial court, and the objection was properly sustained. As stated in 5 Nichols on Eminent Domain (3d ed.), § 21.31(2), p. 286: "A sale of neighboring land, no matter how similar to the land taken, is not admissible unless the sale was so near in point of time as to furnish a test of present value, and the determination of this fact is left to the discretion of the trial court." For an analogous holding on another subject, see Jacobsen v. Poland, 163 Neb. 590, 80 N. W. 2d 891.

The fourth assignment of error argued by the defend-

ant involves the exclusion of an offer by the plaintiffs in the fall of 1958 to sell the undeveloped portions of Meadow Lane, including the subject property, to another realtor for $2,500 per acre. This was approximately 1½ years before the condemnation and included not only the 16 lots involved in the condemnation, but also the northwest portion of the area which from the plat involves another 68 lots. The evidence would indicate that the other 68 lots are much inferior to the subject property. Also, in the fall of 1959, the plaintiffs spent $17,000 in grading the area being condemned. Further, in the same year a connecting street on the south side of the area as well as the intersection was paved, and the utilities were stubbed into the intersection. The defendant relies on a Minnesota case, Minneapolis-St. Paul Metropolitan Airports Commission v. Hedberg-Freidheim Co., 226 Minn. 282, 32 N. W. 2d 569, which held: "While market value is determined by actual sales and not by asking prices, an offer to sell property may be proved against the owner as an admission of its value at or near the time of the offer." We have no quarrel with the case, but question its applicability to the facts herein. The subject property was not in the same condition on March 18, 1960, as it had been in the fall of 1958. The offer covered a large tract of which the subject property comprised less than one-fifth of the area. Much of the other property was inferior to the subject property.

We further observe that the record indicates that the surrounding area was developing almost overnight, so that a year and a half could be too remote in time to be admissible. For a collection of cases on the question of remoteness, see 7 A. L. R. 2d, § 12, p. 810. As we view the law, these are considerations which must be left to the sound discretion of the trial court. We therefore hold that whether evidence of an offer to sell is too remote in time to be admissible is for the trial court to determine in the exercise of a sound discretion. There

was no abuse of discretion in excluding the proffered testimony.

The defendant's fifth assignment of error involves the refusal of the court to give defendant's tendered instruction No. 3 which read as follows: "Mere paper divisions of the property into lots, blocks, streets, and alleys, without any material change in the physical condition or legal ownership of the property are not sufficient to permit a valuation on a lot or front foot basis and the entire tract should be valuated as a single parcel. The value is not to be fixed by what might be obtained in the future had subdivision actually taken place. You are not to consider what a speculator might be able to realize out of a resale of the property when subdivided or improved, but what a present purchaser would be willing to pay for it in the condition it was in when condemned." As we view the evidence, the first sentence of the tendered instruction is argumentative in nature, and did not accurately reflect the evidence.

The authorities cited by the defendant have no application to the facts herein. For instance, this case is not in any way analogous to Rath v. Sanitary District No. One, 156 Neb. 444, 56 N. W. 2d 741, which is the only Nebraska authority cited. In that case, Riverside Addition was platted in 1886. The streets and alleys shown on the plat had never been opened. In fact, 65 years later, when the condemnation was brought, a part of the area, including the street, was planted to a peach orchard. Definitely that is not the situation in the instant case. Here the area taken by condemnation was an integral part of a development then in progress. It is true that only a tentative plat of Meadow Lane has been approved, but final approval had been given without question on two different stages covering the area of the tentative plat up to the subject property. The undisputed evidence is that the tentative plat embraces all of the engineering data for the subject property, and there certainly had been a substantial change in the

physical condition of the property in grading down the hill, laying out the lots, and putting in the street to bring it in conformity with the tentative plat. The evidence is also undisputed that in developments of this type, after the approval of a tentative plat, final approval is a mere formality.

We also note that the defendant, in its original condemnation petition, described the property by metes and bounds, and then said: "* * * that the area above described and conforming to the legal description in the certificate, encompasses Lots 2 to 10, inclusive, Block 8, Lots 1 to 6, inclusive, Block 9, the North 115 feet of Lot 7, Block 9, and all of the abutting street labeled 'Arrowridge Road', all as shown on the tentative plat on file with the City Planning Board of the City of Omaha; that said real estate is located in the vicinity of 116th and Leavenworth Streets, in the City of Omaha."

We are in agreement with the plaintiffs that the area involved in the condemnation was not farm land with a dream of future availability for residential development. It was in actuality a present, real, existing subdivision with 6 years of planning development and construction and with a very substantial financial investment which, as near as we can estimate from the record, was approximately $28,000.

The court gave instructions Nos. 8 and 9, both of which were tendered by the defendant. Instruction No. 8 is as follows: "You are instructed that the compensation for land taken by eminent domain is measured by its market value at the time it was condemned March 18, 1960, and you should not take into consideration its value for special reasons to the owner or enhanced damages because the owner may be prevented from carrying out a particular scheme of improvement. The question is not what estimate the owners may place upon it but what it was worth on the market in its then condition."

Instruction No. 9 is as follows: "In determining the market value of the subject property, sales of a similar

unplatted and unimproved property at or about the time this property was condemned may be taken in consideration, providing such sales are in the open market, that is, by a willing seller to a willing buyer."

These instructions, with the others given, adequately and properly cautioned the jury not to consider speculative values. The jurors were told to consider the value of the property in its condition on March 18, 1960, rather than what it might have been if plaintiffs' development had not been stopped by the condemnation.

Defendant's sixth assignment of error involves the trial court's refusal to give its tendered instruction No. 6, which is as follows: "You are instructed that the availability of public improvements such as sewer, gas and water mains may be taken into consideration by you as one of the elements in determining the value of the property, but you should not determine the value of the property as though it were platted and public improvements installed by a computation of the aggregate value of such prospective subdivision into lots deducting therefrom the estimated cost of such public improvements not yet made and other expenses incident to the future developments of the property." The instruction as tendered would have been confusing and would have negated the theory on which the case was tried. Plaintiffs' witnesses on value were 2 of the 14 members of the American Institute of Real Estate Appraisers in Omaha, and 2 real estate developers who had been involved in west Omaha developments near the area involved. In each instance, the appraisers testified as to the fair and reasonable market value of the condemned tract as of the time of the taking. When asked for the basis of their opinions on the market value, they explained that they used a front foot basis, deducting expenses of installing improvements, which costs were of record without objection; selling costs; profit estimates; and other items deemed appropriate. This testimony went into the record without objection in any form. We agree that the

mere paper division of a tract is usually to be disregarded and the entire tract treated as a single parcel.

Here, however, after the filing and tentative approval of the plat, the plaintiffs proceeded to develop Meadow Lane. The area up to the subject property had been developed and sold. The subject property had been graded. Lots were marked out according to the plat. Arrowridge Road was graded in and ditched preparatory to the letting of a paving contract. A connecting intersection was paved and the utilities stubbed in. This is not a situation where use for subdivision purposes is speculative or even faintly remote. It is one where development is well on the road to completion when stopped by condemnation proceedings. This case is more analogous to Arkansas State Highway Commission v. O. & B., Inc., 227 Ark. 739, 301 S. W. 2d 5, than to the cases cited by the defendant. In that case, the court permitted consideration of the per lot valuation of an area laid out in lots and blocks, but actually enclosed. Here the appraisers considered a front footage approach. We are concerned with the market value of the property. One of the factors to be considered is the use to which the property is adapted and might be put in the immediate present, or at least a use which might be reasonably anticipated in the very near future.

We observe that although defendant's valuation witnesses used a basic acreage valuation approach, comparing the subject property with farm land that had been purchased for development purposes, as the Meadow Lane tract had in the first instance, they also testified to front foot values of several blocks in Meadow Lane. Under the facts in this case, we believe the approach of the plaintiffs' experts was much more realistic than that of the defendant's experts. The instructions of the court fairly, completely, and adequately instructed the jury as to the elements to be considered in determining the market value of the land taken as of March 18, 1960.

There is no merit to the defendant's sixth assignment of error.

Defendant's seventh and final assignment of error is that the verdict of the jury is excessive. The top figure set by the defendant's witnesses was $28,275. The lowest figure set by the plaintiffs' witnesses was $64,500. The award made by the appraisers in county court, from which both sides appealed, was $38,750. The jury, which, in addition to hearing the evidence, viewed the premises, awarded the plaintiffs $52,500.

Under the undisputed evidence in this case, the plaintiffs had an investment of approximately $28,000 in the subject property, not considering the original cost of the land. It is true that $11,000 of this figure is the pro rata share of the cost of bringing the utilities to Meadow Lane and the engineering expense. However, it should be obvious that a developer must be able to spread his costs over the area to be developed. It seems fairly evident that the jury believed the defendant's witnesses to be too conservative in their estimate of the fair and reasonable market value of the premises at the time of the taking, and entirely disregarded their testimony. As we have said many times, it is not for the court to decide which testimony the jury should believe, but we can say that it is difficult to see how it could have accepted the valuations of the defendant's experts without doing a substantial injustice to the plaintiffs.

The question of the adequacy or the inadequacy of an award is not one to which fixed formulae may be applied. Each case must be viewed in the light of the general principles of the valuation applicable to that particular case. As we view the evidence in this record, proper principles of valuation were applied. We cannot say that the verdict of the jury is manifestly wrong or palpably excessive. Consequently, defendant's seventh assignment of error cannot be sustained.

For the reasons set out above, the judgment herein should be affirmed.

AFFIRMED.

SIMMONS, C. J., participating on briefs.