767 N.W.2d 113 (2009)
17 Neb. App. 561
WALTER C. DIERS PARTNERSHIP, a Nebraska partnership, Appellee and Cross-Appellant,
v.
STATE of Nebraska, DEPARTMENT OF ROADS, Appellant and Cross-Appellee.
No. A-08-274.
Court of Appeals of Nebraska.
May 5, 2009.
*117 Jon Bruning, Attorney General, Bradley D. Thornton, South Sioux City, Jennifer A. Huxoll, Lincoln, and Jeffery T. Schroeder, for appellant.
Thomas B. Thomsen, of Sidner, Svoboda, Schilke, Thomsen, Holtorf, Boggy & Nick, Fremont, for appellee.
INBODY, Chief Judge, and SIEVERS and CASSEL, Judges.
CASSEL, Judge.

I. INTRODUCTION
The State of Nebraska, Department of Roads (the State), condemned land in a rapidly evolving commercial development owned by Walter C. Diers Partnership (Diers) at the intersection of U.S. Highways 275 and 30 on the eastern edge of Fremont, Nebraska. In the appeal to district court from the county court's award, the court entered judgment pursuant to jury verdict for $1,043,079, without mentioning interest on the award. We find no abuse of discretion in the court's evidentiary rulings admitting the expert testimony of Diers' appraiser, excluding the State's offer of an earlier appraisal prepared for Diers *118 for another purpose, and admitting the property owner's testimony regarding the sale price of other lots within the development. Because we conclude that Neb.Rev. Stat. § 76-711 (Reissue 2003) mandated that Diers be awarded interest on the judgment, we remand with directions to amend the judgment.

II. BACKGROUND
The State acquired fee simple title to 4.12 acres of Diers' land and a temporary easement to an additional 4.47 acres as of September 28, 2004, for purposes of road construction. Diers appealed to the district court from the assessment by the county court's board of appraisers. The district court conducted a jury trial on December 11 to 14 and 18, 2007, for the sole purpose of assessing the damages that resulted from the taking. At the conclusion of the evidence, the jury awarded Diers $1,043,079. The court entered judgment pursuant to the verdict but did not explicitly award Diers any interest.

1. LAND
The land acquired by the State was originally part of a 195-acre parcel owned exclusively by Diers and lies at the northeast corner of Diers' property. This corner adjoins the intersection of Highways 275 and 30 and is located on the eastern edge of Fremont. In light of the location, the parties do not dispute that the highest and best use of the property acquired was for development purposes.
As of September 28, 2004, Diers had taken significant measures to develop the northern 125 acres of the property, which was separated from the southern 70 acres of the property by a creek. Charles H. Diers (Charles), one of the partners in Diers, began to contemplate developing the northern 125 acres in 1998, when he hired a development coordinator to create site plans. Ultimately, Diers decided to develop the land in stages, in order to avoid the prohibitive costs associated with developing the entire 125 acres at one time. These costs would have included both the cost of improving the land and the cost of paying increased real estate taxes on lots after they had been platted but not yet sold, and a likely loss associated with having created more lots than the market then demanded.
In approximately 2002, Diers had a parkway constructed in roughly the middle of the property, running from the northern edge to the southern boundary of the property. Although the city of Fremont actually constructed the parkway, Diers paid for a large portion of the cost associated with its construction. The parkway has two lanes on each side, a landscaped median, and streetlights. The parkway also contained sewer, water, and gas lines that would be connected to lots as they were later developed.
Diers then platted four lots that were adjacent to the parkway and located at the northern edge of the property. In order to do so, Diers first developed a preliminary plat which showed a development plan for the entire 125 acres. On April 30, 2002, the city council approved Diers' preliminary plat, which contained 27 proposed lots and was entitled "Diers Second Addition." The approval of the preliminary plat remained effective for 2 years. At the same time as the approval of the preliminary plat, Diers received approval of a final plat of the four lots adjacent to the parkway. This plat was also called Diers Second Addition. As a result of the final platting, the four lots were rezoned from agricultural to commercial and became salable.
Prior to the condemnation, Diers sold and fully developed three of the four lots in the final plat of the second addition. A chain restaurant purchased one lot for *119 $300,000, or $4.47 per square foot. Charles testified that he purposefully gave the restaurant a significant discount because he wanted to "jumpstart" development. A local bank acquired two lots for a total of $1,269,773, or $10.16 per square foot. To accomplish these sales and the development of these properties, Diers had an additional road constructed which ran parallel to Highway 30 and along the southern edge of these lots.
In 2002, Diers also established the "Deer Pointe" commercial association and created restrictive covenants for the commercial development which Diers had planned. Prior to the condemnation, Diers had also obtained a topographical map of the entire area and had a boundary survey conducted. By the time the taking occurred, Diers had spent a total of approximately $2.6 million to develop the northern 125 acres.
At trial, Diers adduced evidence that but for the taking, the area of the taking would have already been developed, platted, and sold. Diers had created and circulated a pricelist to market the lots that were proposed but not yet developed as of the date of condemnation. Douglas Halvorson, the site's development coordinator, and Charles testified that they had originally planned to next develop the lots on the corner of Highways 275 and 30 but discontinued these plans once they became aware of the taking. Numerous witnesses testified to the desirability of the location where the taking occurred. Primarily, the appeal of this particular location was that it was in a high-traffic area, was highly visible, and would have been easily accessible.
Diers also adduced evidence regarding the detrimental effects of the taking on the remainder of the property. The taking included the removal of an access which would have allowed convenient entrance to the land remaining in the northeast corner of the property. Richard SeeDiers' certified real estate appraisertestified that this land would now have to be accessed via the parkway, which was 2,000 feet from the proposed lots, whereas the access taken by the State would have been 300 feet from the lots. Diers offered the testimony of Halvorson and two others who had worked on developing the property, all of whom testified that the taking of this access made the property in this area less valuable to potential buyers.

2. VALUATION TESTIMONY
Diers offered See's expert testimony regarding the damages resulting from the taking. See concluded that the damages totaled $2,158,158. See calculated the damages resulting from the loss of land based on the assumption that but for the taking, the northeast corner of Diers' property would have otherwise been sold as individual commercial lots as depicted in the preliminary plat of Diers Second Addition. See used already-developed lots as comparables to arrive at the condemned property's value by factoring in the costs associated with developing the condemned property. See then calculated damages to the remainder of the land on the premise that removing the access would transform corner lotswhich have a higher value due to easy accessinto interior lotswhich are less valuable because access is more difficult.
Charles testified regarding the sale price of the lots on the portions of the property which were sold both before and after the taking and which had been commercially developed.
The State offered the testimony of Gary Hassebrook, a general certified appraiser, and that of another appraiser regarding the land's value. At the request of Diers' accountant, Hassebrook appraised the property for tax purposes and valued *120 the land at $25,000 per acre as of January 16, 2003. The district court sustained Diers' objection to the relevance of the testimony, excluding the appraisal both because it was "too remote in time" and because the court "didn't hear anything linking [Hassebrook's] appraisal from January of '03 to September 28, 2004," the date of the taking.
Although no error is assigned regarding the amount of the jury verdict or the admissibility of the State's evidence, for the sake of completeness, we note that the State presented valuation testimony of its expert, George Tesar, Jr., a general certified appraiser, who testified that the value of the property taken by the State was $137,066 total.
The State timely appeals, and Diers cross-appeals.

III. ASSIGNMENTS OF ERROR
The State alleges, as restated, that the district court erred (1) in allowing valuation testimony from See which valued the subject parcel using a "lot" or "subdivision" method of valuation, including a hypothetical assumption that the property acquired was fully developed as of the valuation date; (2) in excluding Hassebrook's expert testimony regarding his January 16, 2003, appraisal of Diers' property; and (3) in overruling the State's objection to Charles' testimony regarding the sale of developed lots on the subject property.
On cross-appeal, Diers alleges that the district court erred in failing to award interest pursuant to § 76-711 on the judgment.

IV. STANDARD OF REVIEW
[1] The admission of expert testimony is ordinarily within the trial court's discretion, and its ruling will be upheld absent an abuse of discretion. McNeel v. Union Pacific RR. Co., 276 Neb. 143, 753 N.W.2d 321 (2008).
[2] A trial court has the discretion to determine the relevancy and admissibility of evidence, and such determinations will not be disturbed on appeal unless they constitute an abuse of that discretion. Sturzenegger v. Father Flanagan's Boys' Home, 276 Neb. 327, 754 N.W.2d 406 (2008).
[3] An appellate court reviews questions of law independently of the lower court's conclusion. County of Hitchcock v. Barger, 275 Neb. 872, 750 N.W.2d 357 (2008).

V. ANALYSIS

1. THE STATE'S APPEAL
All of the State's assignments of error pertain to whether particular evidence regarding the valuation of Diers' damages is relevant and admissible. For this reason, we first recall the applicable rules for calculating damages in a condemnation action and address the district court's ruling regarding each piece of disputed evidence.
[4-6] In a condemnation proceeding, the landowner whose property is taken is entitled to compensation for the damages caused to the landowner's property. See Moyer v. Nebraska City Airport Auth., 265 Neb. 201, 655 N.W.2d 855 (2003). In a condemnation action, there are two elements of damage: (1) market value of the land taken or appropriated and (2) diminution in value of the land remaining, less special benefits. Id. Damages are to be measured as of the date of the taking. See Liberty Dev. Corp. v. Metropolitan Util. Dist., 276 Neb. 23, 751 N.W.2d 608 (2008).
[7] There are three generally accepted approaches used for the purpose of valuing *121 real property in eminent domain cases: (1) the market data approach, or comparable sales method, which establishes value on the basis of recent comparable sales of similar properties; (2) the income, or capitalization of income, approach, which establishes value on the basis of what the property is producing or is capable of producing in income; and (3) the replacement or reproduction cost method, which establishes value upon what it would cost to acquire the land and erect equivalent structures, reduced by depreciation. Id. Each of these approaches is but a method of analyzing data to arrive at the fair market value of the real property as a whole. Id.
In the present case, all valuation testimony was based upon the comparable sales method and neither party argues that either of the remaining methods of valuation was appropriatenor do we believe that this is a situation where either would apply.

(a) See's Expert Testimony
[8] The State alleges that See's expert testimony violated the "unit" rule and thus is not relevant to valuation. Ordinarily, the entire property involved in an eminent domain proceeding is to be valued and damages to it assessed as a whole. Y Motel, Inc. v. State, 193 Neb. 526, 227 N.W.2d 869 (1975). The State claims that See's testimony violated the "unit" rule (1) by valuing the condemned land as if it had been subdivided, (2) by valuing the southern 70 acres on a different per-unit basis from the northern 125 acres, and (3) by calculating severance damages as the total of the damages to each affected tract. We address each issue in turn.
[9] The admission of expert testimony is ordinarily within the trial court's discretion, and its ruling will be upheld absent an abuse of discretion. McNeel v. Union Pacific RR. Co., 276 Neb. 143, 753 N.W.2d 321 (2008). An expert's opinion is ordinarily admissible under Neb.Rev.Stat. § 27-702 (Reissue 2008) if the witness (1) qualifies as an expert, (2) has an opinion that will assist the trier of fact, (3) states his or her opinion, and (4) is prepared to disclose the basis of that opinion on cross-examination. Smith v. Colorado Organ Recovery Sys., 269 Neb. 578, 694 N.W.2d 610 (2005). The State's arguments primarily pertain to whether See's testimony is relevant and thus of assistance to the trier of fact.

(i) Valuation Pursuant to Subdivision Method
[10] The State insists that the particular land taken had to be valued using comparables similar in size to Diers' entire property because the "unit" rule of valuation required that the land be valued as a whole. The State alleges that See's testimony is inadmissible because he valued the land taken on the premise that it would have otherwise been subdivided, developed, and sold. In his appraisal, See assumed that the property taken would have composed a portion of the proposed lots depicted in the preliminary plat of the second addition. He then valued these lots by using comparables similar in size but fully developed. See then accounted for the fact that the comparable lots had been developed by accounting for the cost of developing the property. In arriving at the proposed lots' value, See also accounted for the likely delay in selling the property and a bulk sale. See determined a per-square-foot value for these lots  which was the same for all of the lots. See then calculated the value of the condemned land by taking the number of square feet condemned and multiplying it by the per-square-foot value. In determining the total value of the land taken, See added the full value of the land the State acquired in *122 fee simple to the rental value of the land to which the State took a temporary easement.
[11] Where land has not been developed at all, but has the potential for development, the "unit" rule applies and the land must be valued as one unit. See Rath v. Sanitary District No. One, 156 Neb. 444, 56 N.W.2d 741 (1953). However, the Nebraska Supreme Court's decision in Timmons v. School Dist., 173 Neb. 574, 114 N.W.2d 386 (1962), provides an alternative basis for valuation where land is in the process of development. Diers maintains that the valuation method in Timmons applies.
In Timmons, the Nebraska Supreme Court upheld the trial court's decision to reject proposed jury instructions that would have instructed the jury not to consider the condemned land's subdivided value. One such instruction stated that the property could not be valued "`as though it were platted and public improvements installed by a computation of the aggregate value of such prospective subdivision into lots deducting therefrom the estimated cost of such public improvements not yet made and other expenses incident to the future developments of the property.'" Id. at 583, 114 N.W.2d at 392. The landowner offered evidence of his property's value according to the method proscribed by this instruction. In upholding the district court's decision to reject this instruction, the Nebraska Supreme Court determined that the extent to which the owner had already taken substantial steps to develop the condemned property justified the use of the valuation method proscribed by the instruction. In particular, the property owner had purchased a large tract of property, had planned to develop it into residential subdivisions in stages, had filed a preliminary plat for the area taken, and had already fully developed the property directly adjacent to the area of the taking. At the time of the taking, the pavement and all utilities had been brought up to the edge of the condemned area, the condemned area had been graded, and a street had been cut and graded through the condemned area in preparation for paving. The property owner had spent a total of $28,000 to develop the land that was condemned.
[12] Considering all of the circumstances, we cannot say that the district court abused its discretion in admitting See's expert testimony. When the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion. Japp v. Papio-Missouri River NRD, 273 Neb. 779, 733 N.W.2d 551 (2007). The relevant method of valuation is determined by the facts, and See's valuation accounted for the facts in the record. In the instant case, Diers put a significant amount of time and effort into developing the property, as did the property owner in Timmons. Both had created an overall development scheme for a large tract of property, had spent significant sums to realize the overall scheme, had fully developed other portions of the property, and had preliminarily platted the area of the taking. Although, in the instant case, the preliminary plat had expired approximately 5 months before the taking, this difference is of little significance. According to undisputed testimony, it would have been a mere formality to obtain reapproval if the taking had not intervened. The only notable difference between the instant case and Timmons is that Diers had not yet physically improved the property subject to the taking or immediately adjacent thereto. However, we find that this is a matter that goes to the weight of the evidence as opposed to its admissibility.
*123 The state of development of the overall tract in the instant case made finding a precisely comparable tract of land difficult. The tracts of land utilized as comparable properties varied from the subject land in their state of development. They were either large, undeveloped tracts similar in size to Diers' entire tract or small, developed properties similar in size to the lots Diers had preliminarily platted. The larger undeveloped properties were dissimilar because they had not yet been improved, while Diers had already begun to improve the property and sell it off in small developed tracts. The smaller developed properties were dissimilar because they had been finally platted and improved, whereas this was not true for a significant portion of Diers' property. The record reflects that Diers' tract was somewhere in between the two types of comparables. In order to obtain a valuation using comparables, See had to choose one category of dissimilar property and make adjustments to analogize it to Diers' property as best he could. Based upon the record, the district court did not abuse its discretion in permitting See to do so.

(ii) Valuation of Portions of Parcel on Distinct Per-Unit Bases
[13] The State next contends that the district court abused its discretion in overruling an objection to See's testimony in which he valued the southern 70 acres of the property separately from the northern 125 acres for purposes of determining damages. In his appraisal, See valued the 70 acres on a per-acre basis and at a lesser per-unit value than the 125 acres. The State contends that this testimony also violated the "unit" rule.
[14, 15] As noted above, ordinarily, the entire property involved in an eminent domain proceeding is to be valued and damages to it assessed as a whole. Y Motel, Inc. v. State, 193 Neb. 526, 227 N.W.2d 869 (1975). See Walkenhorst v. State, 253 Neb. 986, 573 N.W.2d 474 (1998). Where, however, it is clearly divisible from the standpoint of use and adaptability, presenting different factors and elements of damage, it definitely is not error to permit such division. Y Motel, Inc. v. State, supra. In determining whether the property is to be considered as a whole or as units, usually unity of use is given greater emphasis, and has been called the controlling and determining factor. Id. In Y Motel, Inc., the Nebraska Supreme Court upheld the district court's decision to admit valuation testimony in which a motel property was valued separately from adjoining property that was unimproved, except for a barn.
Similarly, the record in the case before us reflects that the northern 125 acres and the southern 70 acres were not adaptable for the same use. Diers had filed a preliminary plat for the northern 125 acres and had begun to develop it for commercial use. In contrast, Diers had not developed the southern 70 acres of the property, had no plans to do so in the immediate future, and, from the photographic evidence, appears to have used it as farmland. Diers presented evidence that the southern portion was better adapted to development for residential purposes. Further, the northern 125 acres was separated from the southern 70 acres by a creek, which served as a significant physical boundary affecting the adaptability of the southern portion. In addition, the northern 125 acres was bordered by Highway 30 on the north, but there is no such busy road to the south of the property. In light of the substantial differences between the northern and southern portions of the overall tract, we find no abuse of discretion in the district court's ruling allowing the testimony.

*124 (iii) Calculation of Remainder Damages

[16] Finally, the State contends that See violated the "unit" rule when he calculated remainder damages as the sum of the damage to three "corner" lots caused by the taking of an access point. See calculated damages as the difference in value of these lots with the access point and without the access point.
[17] While damage to the remaining property as a "whole" is the correct measure of remainder damages, damage to the "whole" may result from an injury which affects only particular portions of the property. The Nebraska Supreme Court's decision in McGinley v. Platte Valley Public Power and Irrigation District, 133 Neb. 420, 275 N.W. 593 (1937), illustrates this point. In McGinley, the condemnor acquired by eminent domain 78.13 acres of riparian land from the landowners' cattle ranch, which exceeded 46,000 acres in total size. The property owners offered testimony that each of the remaining acres of land would decrease by $1 in value, even though the record reflected that the taking detrimentally affected only a portion of the property and that the remainder of the property had not been affected. The Nebraska Supreme Court held that the trial court erred in permitting the jury to assess damages on a per-acre basis for the entire property where portions of the property were not affected. The court reasoned that "[t]here must be a limit to remote, unaffected lands that may be considered in estimating depreciation in their value by condemnation of contiguous lands taken for public purposes." Id. at 426, 275 N.W. at 596.
Thus, severance damages, although assessed to the "whole" property, may result from the injury caused to only portions of the property. Therefore, the district court did not abuse its discretion in admitting See's expert testimony that only a portion of the property was injured by the severance.
The State has cited Frank v. State, 176 Neb. 759, 127 N.W.2d 300 (1964), in support of its argument that damages must be assessed to the whole. In Frank, the property owners attempted to increase their award of severance damages by requesting that the fact finder calculate severance damages only as to two small strips of the property directly adjacent to the area of the taking. These strips of land were not "platted, marked, or naturally divided in any way," and the remainder damages claimed by the landowners appeared to stem only from the fact that adjoining land was taken and not a loss of available resources or access. Id. at 762, 127 N.W.2d at 302. The property owners objected to the condemnor's evidence that the takingused to build a highwayactually increased the property's value as a whole. The Nebraska Supreme Court held that the evidence regarding the overall benefit was relevant and admissible.
We distinguish Frank because it is inapposite to the instant case for two reasons. First, we have already determined that evidence of damages calculated using the "subdivision" method of valuation is admissible in the instant case and thus, unlike Frank, a per-lot assessment of severance damages is admissible. Second, neither party has claimed that anything other than the loss of accesswhich affects only a portion of Diers' propertyimpacts the value of the remaining property. Clearly, the loss of access does not affect those portions of the property that did not rely upon the access taken by the State.

(b) Hassebrook's Valuation Testimony
[18] The State argues that the district court erred in excluding Hassebrook's expert testimony regarding his January 16, 2003, appraisal of Diers' property. Hassebrook *125 appraised 350 acres of Diers' property, including the property at issue, on a per-acre basis for tax purposes. In an offer of proof, the State indicated that he would have valued Diers' land at $25,000 per acre. The trial court excluded Hassebrook's testimony based on its determination that the testimony was not relevant, because Hassebrook could not link his appraisal to the value of Diers' property as of the date of the taking and that it was "too remote in time." Hassebrook had not updated his appraisal to reflect sales that occurred after the appraisal.
Additionally, Hassebrook did not know the status of Diers' plans to develop the property. Hassebrook admitted that he had no information regarding development plans and that had he been aware of "real detailed plans ready for development" or "information that [the property is] ready to develop," he would have valued the property using a different method.
A trial court has the discretion to determine the relevancy and admissibility of evidence, and such determinations will not be disturbed on appeal unless they constitute an abuse of that discretion. Sturzenegger v. Father Flanagan's Boys' Home, 276 Neb. 327, 754 N.W.2d 406 (2008). Under these circumstances, the trial court did not abuse its discretion in determining that Hassebrook's appraisal was not relevant. The appraisal failed to account for factors relevant to property value. After Hassebrook finished his appraisal, the surrounding property continued to develop and change, and Hassebrook did not purport to account for these changes. Also, Hassebrook failed to account for the fact that Diers was in fact developing the property.

(c) Charles' Valuation Testimony
[19] The State argues that the district court abused its discretion in overruling its foundation objections to Charles' testimony on the sale prices of developed lots on the northern 125 acres of Diers' property. The sales to which Charles testified occurred both before and after September 28, 2004the most recent of which was pending at the time of trial.
[20-22] Generally, evidence as to the sale of comparable property is admissible as evidence of market value, provided there is adequate foundation to show the evidence is material and relevant. Liberty Dev. Corp. v. Metropolitan Util. Dist., 276 Neb. 23, 751 N.W.2d 608 (2008). The foundation evidence should show the time of the sale, the similarity or dissimilarity of market conditions, the circumstances surrounding the sale, and other relevant factors affecting the market conditions at the time. Id. Whether properties, the subject of other sales, are sufficiently similar to the property condemned to have some bearing on the value under consideration, and to be of aid to the jury, must necessarily rest largely in the sound discretion of the trial court. Id.
We have reviewed the record and determined that the foundational requirements were fulfilled. Charles personally testified to the time of the sale, the location of the property, and any conditions that affected the sale price. Charles and other witnesses testified to the condition of the marketthat during the entire time period, the land in this area was selling well because the area was being commercially developed. Because the foundational requirements were fulfilled, we find that the district court did not abuse its discretion in allowing Charles to testify to the sale price of other lots in the northern 125 acres.

2. DIERS' CROSS-APPEAL
[23] In its cross-appeal, Diers assigns that the district court erred in failing to award Diers interest on the judgment as required by § 76-711. Section 76-711 *126 provides that the condemnee is to receive interest as follows:
If an appeal is taken from the award of the appraisers by the condemnee and the condemnee obtains a greater amount than that allowed by the appraisers, the condemnee shall be entitled to interest from the date of the deposit at the rate provided in section 45-104.02, as such rate may from time to time be adjusted, compounded annually, on the amount finally allowed, less interest at the same rate on the amount withdrawn or on the amount which the condemner offers to stipulate for withdrawal as provided by section 76-719.01.
Pursuant to this section, if a property owner appeals the county court's award to the district court, interest begins to accrue when the condemnor deposits the amount of the award.
[24, 25] We first address the State's argument that Diers failed to preserve this issue for appellate review. Ordinarily, an appellate court will not consider an issue on appeal that was not presented to or passed upon by the trial court. Walsh v. State, 276 Neb. 1034, 759 N.W.2d 100 (2009). However, in the instant case, Diers had no opportunity to raise this issue prior to entry of the final judgment. The omission occurred in the entry of the judgment itself. While Diers may have had another remedy in the form of a motion to alter or amend the judgment pursuant to Neb.Rev.Stat. § 25-1329 (Reissue 2008), the State has provided no authority for the proposition that the failure to file such a motion precludes raising the omission on appeal. We reject the State's argument and, thus, address the cross-appeal.
We note that Diers did not request interest in the prayer of its petition filed with the district court. However, pursuant to Thacker v. State, 193 Neb. 817, 821, 229 N.W.2d 197, 201 (1975), whether Diers is entitled to interest "rests upon [§] 76-711. . . and not upon the prayer of the petition."
Pursuant to § 76-711, Diers is entitled to interest in the prescribed amount, because it received a larger judgment in district court than was awarded by the appraisers in county court and we find merit in Diers' cross-appeal. We therefore remand to the district court with directions to modify the judgment to include the interest required by § 76-711.
[26] We recognize that in some circumstances, judgments are deemed to include statutorily mandated interest even though the judgment does not explicitly mention interest. See, Sherard v. State, 244 Neb. 743, 509 N.W.2d 194 (1993); Stuart v. Burcham, 62 Neb. 84, 86 N.W. 898 (1901). However, we believe that the better practice is for the district court to include an explicit award of interest where the statute mandates interest as part of the relief to be granted. This ensures that parties can fulfill the obligations of a judgment without the necessity of further proceedings.

VI. CONCLUSION
Because we find that the district court did not abuse its discretion in admitting See's or Charles' valuation testimony, or in excluding Hassebrook's prior appraisal, we find no merit in the State's assignments of error on appeal. On Diers' cross-appeal, we conclude that Diers was entitled to interest pursuant to § 76-711. We therefore affirm the judgment of the district court and remand with directions to modify the judgment to expressly award Diers interest pursuant to § 76-711.
AFFIRMED AND REMANDED WITH DIRECTIONS.