IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

GOEBEL V. ARPS RED-E-MIX

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

RICK GOEBEL, APPELLANT AND CROSS-APPELLEE,

V.

ARPS RED-E-MIX, INC., APPELLEE AND CROSS-APPELLANT.

Filed May 14, 2019.    No. A-18-634.

Appeal from the District Court for Dodge County: GEOFFREY C. HALL, Judge. Affirmed in part, and in part reversed and remanded for further proceedings.

David A. Domina and S. Ryan Greenwood, of Domina Law Group, P.C., L.L.O., for appellant.

Robert S. Keith and Kristina J. Kamler, of Engles, Ketcham, Olson & Keith, P.C., for appellee.

PIRTLE, ARTERBURN, and WELCH, Judges.

WELCH, Judge.

## INTRODUCTION

Rick Goebel sued Arps Red-E-Mix, Inc. (Arps), claiming Arps' concrete production plant created a private nuisance and recurring trespass affecting Goebel and his property. After Goebel and Arps filed competing motions for summary judgment, the Dodge County District Court granted summary judgment in favor of Arps. We affirm in part, and in part reverse and remand for further proceedings.

## STATEMENT OF FACTS

Arps owns and operates a concrete mixing plant in Fremont, Nebraska. In 2008, Goebel moved into a home located near the plant. Goebel has sued Arps alleging that, since he moved into

his home, Arps has expanded its operations and those expanded operations have produced toxic and hazardous dust, excessive noise, odors, and traffic which constitute a private nuisance and recurring trespass affecting him and his property. Specifically, Goebel alleges that Arps'

> actions all interfere with [Goebel's] use and enjoyment of his residence and land, and cause him to suffer annoyance, inability to use his residence normally, disturbance and disruption of his ability to be outside his residence, attend to his garden and engage in outside activities, and cause him to suffer annoyance, disturbance and disruption due to dust, odors, noise pollution, and hazardous conditions caused by the acts of Arps. Arps operates its business and knows it engages in the activities and causes the disruptions described above. It elects to do so on a daily basis.

In his trespass claim, Goebel alleged:

> In the course of Arps' operations, Arps causes cement and other particulates to be lifted up and blown into the air and onto, across, against, and into [Goebel]'s residence and residential property. These particulates invade [Goebel]'s property without permission, are noxious and obnoxious, and constitute unauthorized entries into and invasions of [Goebel]'s private real estate. Arps' actions constitute a trespass each day when the unauthorized entries occur.

Arps filed a motion for summary judgment which asserted that Goebel failed to meet "his burden of production" regarding the following claims, among others: that Arps dramatically expanded its operation in the 4 years preceding this litigation; that Arps operates a cement manufacturing facility; that Arps emits fly ash or radioactive material; that Arps' activities proximately cause dust or odor to trespass upon Goebel's property or interfere with the use and enjoyment of his property; that Arps proximately causes increased mosquitoes on Goebel's property; that Arps' activities proximately caused Goebel to suffer adverse health effects; that Arps pollutes groundwater or storm water draining from its facility; and that Arps inhibits the growth of Goebel's lawn and garden. Arps also asserted that Goebel's claim was barred by the affirmative defenses or counterclaims of a prescriptive easement, equitable estoppel, laches, and "Unclean Hands or its legal counterpart, in pari delecto." Goebel filed a competing motion for summary judgment alleging that, as a matter of law, Arps' assertion of an "alleged prescriptive easement" and "affirmative defenses of [Goebel] knowingly coming to the nuisance, equitable estoppel, . . . laches, and unclean hands are without merit."

Both parties submitted evidence in connection with their respective motions for summary judgment. Relevant to this appeal, Goebel's evidence included the deposition and report of Paul Ziemba, a professional engineer who provided certain expert testimony in connection with this matter; Goebel's depositions; the testimony of Michael Arps; and the testimony of various neighbors of Goebel. Goebel did not offer expert testimony on whether any of the alleged nuisances caused damage to Goebel. After reviewing the evidence, the district court granted summary judgment in favor of Arps. In its order, the district court stated as follows:

> [Goebel] has the burden by way of expert witness testimony to establish the appropriate standard of care and that there was a breach of that standard which caused some damage to [Goebel]. Such expert testimony is necessary to interpret and apply the

applicable industry standards, scientific data, and articles, as well as the environmental rules and regulations, such as the OSHA, NIOSH, NDEQ, and the EPA Clean Air Act. This requisite information is beyond the comprehension of the average layperson. See Doe v. Zebek, 255 Neb. 963 (2008); Freeman v. Hoffman-LaRoche, Inc., 300 Neb. 47 (2018). Here, [Goebel] has relied on the testimony of his engineering expert, Mr. Paul Ziemba, to establish the standard of care, the breach of same, and causation.

Mr. Ziemba testified that he did not complete any air quality testing of the Arps' plant (Ex. 27) Mr. Ziemba admits that he does not have sufficient evidence or data to determine whether Aps violated the air quality standards of the Environmental Protection Agency's Clean Air Act or the Nebraska Department of Environmental Quality air quality regulations. (Ex. 27) Further, Mr. Ziemba was unable to produce any citations, violations, fines or other documentation indicating that Arps violated any laws, rules, or regulations relating to air quality or emission standards. Although the evidence offered by [Goebel] through Mr. Ziemba as to the appropriate standard of care is thin at best, when said evidence is viewed in a light most favorable to [Goebel], this Court finds that there is sufficient evidence to avoid summary judgment as to the establishment of the appropriate standard of care. However, this Court does not make a Daubert/Schafersman analysis as to the opinions offered by Mr. Ziemba at his point.

Next, we move to the issue of whether [Goebel] provided sufficient expert witness testimony to establish causation for the alleged damages claimed by [Geobel]. [Geobel] is charged with the burden of producing evidence to show to a reasonable degree of certainty that Defendant Arps is the proximate cause of some damages claimed by [Goebel]. See Worth v. Kolbeck, 273 Neb. 163 (2007); J.D. Warehouse v. Lutz & Co., 253 Neb. 189; Gagne v. Severa, 259 Neb. 884 (2000). In his video deposition (Ex. 27) and his expert opinion report (Ex. 26), Mr. Ziemba does not provide sufficient evidence to establish causation. Mr. Ziemba testified that he observed dust leaving the Arps' plant in Fremont, but he does not know the chemical composition of the dust. Further, he did no interior on-site inspection but merely observed the plant from the outside. Mr. Ziemba did not test the emissions from the Arps' plant. He cannot say if the Arps' emissions are significant or at a toxic level. Finally, his opinions as to causation are expressed in the terms of a "possibility", not a probability as required ty Nebraska law. See Rankin v. Stetson, 275 Neb. 775 (2008). In sum, the opinions of Mr. Ziemba do not rise to the requisite level of an expert opinion to show that Defendant Arps is the proximate cause of any damages claimed to a reasonable degree of certainty. Mr. Ziemba fails to provide the necessary linkage between the conduct of Arps and the damages claimed by [Goebel]. This Court finds that Mr. Ziemba's opinions as to causation are speculative at best.

In addition, Mr. Goebel's claim that he has suffered damages relating to dermatitis and respiratory issues caused by Arps are not supported by the medical evidence to a reasonable degree of medical certainty. See Thone v. Regional West Medical Center, 275 Neb. 234 (2008); Rankin v. Stetson, 275 Neb. 775 (2008).

WHEREFORE, the Court hereby finds and determines that [Arps] is entitled to summary judgement as a matter of law. [Goebel] has failed to establish that Defendant Arps was the proximate cause of any damages that he has allegedly suffered. As a result,

the Court sustains [Arp]'s Motion for Summary Judgment and overrules [Goebel]'s Motion for Summary Judgment in total. This matter is dismissed with prejudice.

Goebel has appealed from the district court's granting of summary judgment in favor of Arps, and Arps has cross-appealed.

## ASSIGNMENTS OF ERROR

Goebel assigns that the district court erred (1) in concluding that expert testimony was required to prove his claim for private nuisance and granting summary judgment in favor of Arps on this claim, (2) in applying the wrong standard of proof by requiring expert testimony to prove dust and noise constitute a private nuisance and by requiring evidence "to a reasonable degree of certainty" and not by the greater weight of the evidence, (3) in concluding expert testimony was required to prove his claim for trespass and granting summary judgment in favor of Arps on this claim, and (4) in weighing the evidence before it and deciding disputed issues rather than determining whether genuine issues were present and halting its inquiry when factual issues were identified.

Arps cross-appeals arguing that the district court erred by not evaluating or ruling on Arps' counterclaim and affirmative defense seeking a prescriptive easement which Arps argues would bar this action and future similar actions.

## STANDARD OF REVIEW

An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Sparks v. M&D Trucking*, 301 Neb. 977, 921 N.W.2d 110 (2018).

In reviewing the grant of a motion for summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, giving that party the benefit of all reasonable inferences deducible from the evidence. *Ecker v. E & A Consulting Group*, 302 Neb. 578, 924 N.W.2d. 671 (2019).

## ANALYSIS

### EXPERT TESTIMONY

Goebel's first assignment of error is that the court erred in concluding that expert testimony was required to prove Goebel's claim for private nuisance and granting summary judgment in favor of Arps on that claim. The district court's actual ruling was that expert testimony offered by Geobel failed to establish a sufficient link between any conduct of Arps and any damage to Goebel. The court separately held that no medical expert opined that Goebel's dermatitis and respiratory issues were linked to Arps' conduct. Accordingly, the district court granted summary judgment to Arps' on the very narrow basis that Goebel failed to provide sufficient expert testimony to establish causation in this case.

The Nebraska Supreme Court set forth the elements for actionable private nuisance and consequent liability in *Hall v. Phillips*, 231 Neb. 269, 278, 436 N.W.2d 139, 145 (1989):

For a law action tried to a jury, where a court may be required to fashion instructions specifying the requirements for an actionable private nuisance and consequent liability, we are persuaded that the Restatement (Second) of Torts § 822 (1979) expresses a suitable standard to determine when one may be subject to liability and provides more guidance to a jury than do the present expressions concerning existence of a private nuisance as currently characterized in Nebraska equity cases. While enhancing the fact finder's task, the Restatement's "intentional and unreasonable" invasion requirement takes into account the various property rights of all parties to a law action based on a tortious private nuisance. Therefore, we hold that in a law action one may be subject to liability for a tortious private nuisance (1) if the defendant's conduct is a proximate cause of an invasion of another's interest in the private use and enjoyment of land and (2) if the invasion is intentional and unreasonable or is otherwise actionable under rules controlling liability for negligence or liability for abnormally dangerous conditions or activities. See the Restatement, *supra*, § 822.

As such, in order to prevail in his claim for private nuisance, Goebel was required to show that Arps' conduct proximately caused an invasion of Goebel's interest in the private use and enjoyment of his land. The invasion that Goebel describes in his complaint generally consisted of two separate theories. First, in paragraph 8 of his Second Amended Complaint, Goebel pled:

Arps' conducts concrete and cement operations in a residential area of Fremont, a city of the first class, in Dodge County. Arps' intentional actions produce hazardous dust and unhealthy air particulates; these particulates pass onto [Goebel]'s premises. Defendant Arps mixes Portland Cement, coal based fly ash, aggregates like sand and gravel, water, and additional chemicals to produce its ready mix concrete. Portland Cement and fly ash are known to be toxic and hazardous materials.

Second, in addition to alleging that Arps is producing toxic and hazardous material which constitute a nuisance, Goebel separately pleads more general forms of nuisance. Paragraph 10 of Goebel's second amended complaint describes, in part, conduct resulting from Arps' expanded operations as follows:

When [Goebel] moved into his current residence, Arps was operating across the street in a more respectful manner. However, its operations have significantly changed since [Goebel] became a neighbor and as a result they have become a nuisance. These changes occurred:

10.1 Arps dramatically expanded its operations. Its expansions included:

- addition of a new or expanded concrete mixing facility;

- addition of new or expanded waste locations and fields, and waste disposal areas westward;

- a significant increase in the amount of land, particularly to the west; creation or expansion of a waste dump with standing water;

- creation of a dangerous, deep, open pit in the ground for liquid and viscous industrial waste;

- additional size of operation, including its plant production capacity and output, and its plant shipment capacity, volume of outbound goods, and demand for inbound goods;

- emissions of fine dust consisting of cement particulates and other particles;

- use of residential and public streets as part of its business premises.

10.2. Arps increased the numbers of trucks associated with the Arps operation[,] use [sic] the residential streets adjacent to [Goebel]'s property as industrial loading, standing and waiting areas, private lanes, roads and routes. They lumber past [Goebel]'s residency [sic] in dramatic numbers, at excessive speeds, in huge sizes, and with deleterious effects.

10.3. Arps extended its hours of operations and the dust, noise, traffic and deleterious activities of its active hours of operations.

10.4. Arps commenced and expanded noise generating activities at deleterious times and noise levels.

10.5. Arps created, maintains, expanded, and failed to reduce and eliminate a vast slurry pit believed to extend into the ground water and used to dump cement truck wash out water without treatment, screening, filtering or purifying it before it is dumped. The depth is believed to be many feet and a depth that varies from time to time.

10.6. Arps created, maintains, or allows to exist pools of standing water which contain deteriorating materials, emit offensive odors, and provide breeding habitat for noxious insects.

10.7. Arps created, maintains, or allows to exist an area that, from time to time, attracts children and youth to its rough piles, internal walls and water holes. These areas are dangerous to children, not fenced, and are not identified with warning signs and devices. This causes [Goebel] to be constantly on edge to protect children seen in the area from the harm of being on Arps' premises.

Each and every preceding expansion, action, failure to act, or other activity by Arps continues to occur and impact [Goebel] on a daily basis.

Geobel goes on to describe how the combination of these factors from Arps' expanded operations constitute a nuisance. In paragraph 11 of his amended complaint, Goebel alleges:

These actions all interfere with [Goebel]'s use and enjoyment of his residence and land, and cause him to suffer annoyance, inability to use his residence normally, disturbance and disruption of his ability to be outside his residence, attend to a garden, and engage in outside activities, and cause him to suffer annoyance, disturbance and disruption due to dust, odors, noise pollution, and hazardous conditions caused by the acts of Arps. Arps operates its business and knows it engages in the activities and causes the disruptions described above. It elects to do so on a daily basis.

Goebel then alleges that Arps' alleged conduct, which he describes as a nuisance, proximately caused general damages to him which are then set forth in the following paragraphs of his second amended complaint:

16.1. Produces and emits excessive quantities of dust, particulate waste and solid waste,

16.2. Discharges effluent onto the public streets and into the public sewers,

16.3. Emits foul odors,

16.4. Provides breeding grounds for insects, including but not limited to mosquitos which breed in excessive quantities,

16.5. Causes lime and other chemicals to be emitted and transported in the air in excessive quantities, come in contact with [Goebel] and his property, cause various health issues including dermatitis, respiratory difficulties, and other illnesses, which have compelled [Goebel] to seek, out of necessity, medical care. This medical care has included, in [Goebel]'s case, treatment and care for dermatitis, respiratory difficulties, and other conditions.

Goebel further alleges that Arps' acts and omissions proximately caused him general damages, including "physical injuries, physical annoyance and interference with the use of [his] land. These damages are continuing to occur."

Taken together, Goebel's complaint then speaks to two different forms of nuisance and damages relating thereto. First, Goebel claims that Arps' production plant produces hazardous or toxic dust which has caused him physical injuries. Second, Goebel claims that Arps' production plant otherwise produces excessive dust, noise, traffic, odors, and insects which cause general disturbance with the use and enjoyment of his land. To all of these claims, the district court held that Goebel was required to provide expert testimony which linked the conduct described with the damages alleged and that Goebel's failure to do so resulted in the granting of Arps' motion for summary judgment. Thus, the question becomes whether Goebel was required to proffer expert testimony governing proximate cause on all of these subjects in order to prevail in the face of Arps' motion for summary judgment.

The Nebraska Supreme Court recently addressed the requirement for expert testimony in *Pitts v. Genie Indus.*, 302 Neb. 88, 921 N.W.2d 597 (2019). Pitts involved a products liability claim based upon strict liability in tort. Like the case at bar, the district court in *Pitts* granted summary judgment to the defendant for plaintiff's failure to provide expert testimony in connection with the element of causation as it related to the plaintiff's claim. In addressing the necessity for expert testimony, the Nebraska Supreme Court held:

Findings of fact as to technical matters beyond the scope of ordinary experience are not warranted in the absence of expert testimony supporting such findings. With respect to the requirement of expert testimony, the test is whether the particular issue can be determined from the evidence presented and the common knowledge and usual experience of the fact finders. This case involves the mechanical functioning of an aerial lift, its component parts, and its electrical circuitry, which are technical matters well outside the scope of ordinary experience. Therefore, to create a material issue of fact, the Pittses were required to present expert testimony that a defective product caused the malfunction that

led to Pitts' injuries. Their only expert was Boye. Thus, the question is whether Boye's testimony created issues of fact as to each element of their products liability claims.

*Pitts v. Genie Indus.,* 302 Neb. at 100, 921 N.W.2d at 609. The court concluded:

> In sum, Boye's testimony as to causation was too speculative for a jury to conclude that the specific alleged design defect or defects were the "but for" cause of the electrical malfunction leading to Pitts' injuries. Because failure of proof concerning an essential element of the nonmoving party's case on a motion for summary judgment necessarily renders all other facts immaterial, we hold that the district court did not err in finding that there remained no genuine issue of fact as to the element of causation and that Genie was entitled to judgment as a matter of law on the Pittses' strict liability design defect claim.

*Id*. at 106, 921 N.W.2d at 612-13.

The Nebraska Supreme court similarly addressed the necessity of expert testimony in *McNeel v. Union Pacific RR. Co.*, 276 Neb. 143, 753 N.W.2d 321 (2018). In *McNeel*, a train conductor brought an action under the Federal Employer's Liability Act alleging he was injured when he inhaled fumes while employed by the railroad company. The district court granted the company's motion to exclude the testimony of the conductor's expert witnesses and subsequently granted the company's motion for summary judgment. In affirming the district court, the Nebraska Supreme Court held:

> In common-law negligence cases where symptoms of an injury are subjective, Nebraska law requires medical testimony. Federal courts apply the same principle in FELA cases where injury is alleged to have occurred as a result of exposure to a toxic substance. In this case, expert testimony was necessary to establish the basis for an inference that McNeel's injuries were caused by the inhalation of fumes attributable to some negligent act or omission on the part of Union Pacific.

*Id*. at 151, 753 N.W.2d at 329. Further, in discussing the evaluation of the expert's testimony by the district court, the Court held:

> Generally, ""'"[s]cientific knowledge of the harmful level of exposure to a chemical plus knowledge that plaintiff was exposed to such quantities are minimal facts necessary to sustain the plaintiff's burden in a toxic tort case."'"" Because McNeel's experts could not identify any toxic substance which caused the symptoms they diagnosed as toxic encephalopathy, their reasoning on causation was reduced to nothing more than post hoc, ergo propter hoc, which, as we said in *Schafersman,* "cannot be said to be helpful to the trier of fact under Neb. Evid. R. 702, even absent the application of a more stringent *Frye* or *Daubert* analysis." Didriksen admitted that this was her reasoning process. Rea testified that because McNeel experienced symptoms during and after his exposure to the unidentified fumes, the exposure caused the symptoms.

*McNeel v. Union Pacific RR. Co.*, 276 Neb. at 154, 753 N.W.2d at 331.

Here, Goebel first attempts to allege a claim of nuisance based on Arps generation of hazardous or toxic dust which allegedly migrated onto Goebel's property and which caused him

- 8 -

medical injury. The issue of whether Arps' plant produced hazardous or toxic dust that migrated over to Goebel's property and caused medical injury to him involves technical matters outside the scope of ordinary experience requiring expert testimony in order to establish the link between Arps' conduct and the injuries that conduct allegedly caused. Goebel failed to proffer expert testimony that Arps actually produced hazardous or toxic dust, that it migrated onto Goebel's property, and that the dust caused the medical conditions of which he claims. As such, the district court did not err in granting summary judgment as to that aspect of Goebel's claim.

That said, Goebel also claimed damages relating to the physical annoyance and interference with the use and enjoyment of his home caused by excessive quantities of dust, odors, excessive traffic, and noise. In that regard, Goebel argues:

> Mr. Goebel, supported by his neighbors, physically watched dust move from the Arps facility onto and into his home, repeatedly. His neighbors and he physically heard and watched motion, commotion, vehicular traffic, and behaviors at the Arps cement mixing plant from their homes, during all times of the day and night, and under circumstances that were disruptive. These were matters witnessed first-hand. So where [sic] their unknown consequences that disturbed sleep, prevented outside activity, and dissuaded Mr. Goebel from inviting friends to his home. These distractions limited his use and enjoyment of the Goebel residence. He sued for damages because he contends these firsthand self-witnessed behaviors and their consequences upon him constitute a private nuisance. And he has good support for this position from many who live nearby.

Brief for appellant at 26.

There is significant support in the record for this assertion. The record includes deposition testimony from Goebel, four of Goebel's neighbors, and Ziemba. Taken together, their statements describe foul odors, truck traffic interference, noise and dust which they testify they observed, heard, and smelled firsthand and which they described originated from Arps' plant. This is not to say these individuals are correct in their assessment as Arps argues that some, if not all, of these alleged dust, noise, and smells are produced by surrounding businesses. But the record is sufficient to create a factual question on these issues if expert testimony is not required to establish causation.

Because the district court dismissed the entirety of Goebel's case on the basis that Goebel failed to produce expert testimony and Goebel assigns that expert testimony on causation was not necessary, we must first determine what causation issues were challenged by Arps in its motion for summary judgment. As mentioned before, as it relates to the issue of causation, Arps pled in its motion for summary judgment that Goebel failed to meet its burden of production concerning the following claims:

> 5. Claims that Arps' activities proximately cause dust to trespass upon Goebel's property or interfere with the use and enjoyment of his property.
>
> 6. Claims that Arps' activities proximately cause odor to trespass upon Goebel's property or interfere with the use and enjoyment of his property.
>
> 7. Claims that Arps proximately causes increased mosquitoes on Goebel's property.
>
> 8. Claims the Arps' activities proximately caused Goebel to suffer adverse health effects.

9. Claims that Arps pollutes groundwater or storm water draining from its facility.

10. Claims that Arps inhibits the growth of Goebel's lawn and garden.

Like the issue of whether Arps produces hazardous or toxic dust which caused medical injury to Goebel, we find that, as to items 7 through 10 as identified in Arps' motion for summary judgment, such items involve technical matters outside the scope of ordinary experience and required expert testimony in order to establish the link between Arps' alleged conduct and the alleged injuries or damages caused by said conduct. Because Goebel failed to proffer expert testimony on causation in response to Arps' summary judgment challenge on these issues, the district court did not err in granting summary judgment in favor of Arps as to those portions of Goebel's claim.

However, we find that as to Goebel's more general averments that Arps' increased production since 2008 created excess dust (as opposed to hazardous or toxic dust), noise, odor, and traffic which tortiously interfered with the use and enjoyment of his property, Goebel was not required to propound expert testimony as to causation because such allegations do not involve matters outside the scope of ordinary experience and the record was sufficient to create a factual issue as to whether Arps' conduct caused damage to Goebel.

Accordingly, we affirm the district court as to the court's grant of summary judgment as to those portions of Goebel's claim that Arps produced hazardous or toxic dust which caused physical injury to Goebel, caused an increase in mosquitoes on Goebel's property, caused adverse health effects to Goebel, caused damage from the pollution of ground or storm water draining from Arps' facility, or inhibited the growth of Goebel's lawn and garden. We reverse the district court's grant of summary judgment as to Goebel's more general claims that Arps' alleged increased production caused excessive dust (as opposed to hazardous or toxic dust), noise, odors, and traffic, which tortuously interfered with Goebel's use and enjoyment of his property, and we remand the matter for further proceedings.

STANDARD OF PROOF

Goebel next argues that the district court applied the wrong standard of proof by requiring evidence "to a reasonable degree of certainty" and not the greater weight of evidence. Brief for appellant at 3. This assignment of error refers to two separate statements within the court's summary judgment order to which Goebel takes exception. First, the district court stated in its order:

> Next, we move to the issue of whether [Goebel] provided sufficient expert witness testimony to establish causation for the alleged damages claimed by [Goebel]. [Goebel] is charged with the burden of producing evidence to show to a reasonable degree of certainty that Defendant Arps is the proximate cause of some damages claimed by [Goebel].

Later, in the same paragraph of the order, after examining the testimony of Goebel's proffered expert Ziemba, the district court concludes "the opinions of Mr. Ziemba do not rise to the requisite level of an expert opinion to show that Defendant Arps is the proximate cause of any damages claimed to a reasonable degree of certainty."

In connection with these statements, Goebel argues:

The burden of proof imposed by the trial court was "reasonable certainty[."] This is the wrong burden for nuisance cases. The authorities [cited] above demonstrate this error. It is also the wrong burden for summary judgment proceedings. . . .

. . . .

. . . The trial court's "reasonable certainty" standard of proof is not found in the law of private nuisance. It is *damages* that must be proven with reasonable certainty when financial compensation for special damages are sought, not *nuisance* or *unreasonable conduct* that must be so proven.

(Emphasis in original.) Brief for appellant at 16-17.

Goebel misconstrues the district court's order. The district court made its statements utilizing the words "reasonable certainty" in connection with its analysis of "whether [Goebel] provided sufficient expert witness testimony to establish causation for the alleged damages claimed by [Goebel]." As it relates to the admissibility of expert witness testimony, the Nebraska Supreme Court has previously held:

Although expert medical testimony need not be couched in the magic words "reasonable medical certainty" or "reasonable probability," it must be sufficient as examined in its entirety to establish the crucial causal link between the plaintiff's injuries and the defendant's negligence. We have explained that "[m]edical expert testimony regarding causation based upon possibility or speculation is insufficient; it must be stated as being at least 'probable,' in other words, more likely than not."

*Lewison v. Renner*, 298 Neb. 654, 663-64, 905 N.W.2d 540, 548 (2018).

Because the district court held that expert testimony was required to establish causation, the court's statement in its order was in reference to the standard relating to the admissibility of the experts' opinions and not a statement governing the burden of proof as to the essential elements of Goebel's claim. Further, as to the testimony offered by Ziemba, he failed to offer an opinion on causation which, when examined in its entirety, was sufficient to establish the causal link between Goebel's damages and Arp's conduct where that testimony was required. This assignment of error fails.

EXPERT TESTIMONY GOVERNING CLAIM FOR TRESPASS

Goebel next assigns that the district court erred in concluding that expert testimony was required to prove Goebel's claim for trespass and in granting summary judgment in favor of Arps on this claim. We have already discussed the issue of expert testimony in a prior section of this opinion. As it relates specifically as an element of Goebel's claim of trespass, Goebel argues, "The Nebraska appellate courts have not formally adopted Restatement (Second) of Torts § 165. The Court is urged to do so." Brief for appellant at 24.

In connection with this assignment of error, we note the district court did not render any decision on this issue because it granted summary judgment solely on the issue of Goebel's failure to proffer expert evidence in connection with this element. An issue not presented to or decided on by the trial court is not an appropriate issue for consideration on appeal. *Ecker v. E & A*

*Consulting Group*, 302 Neb. 578, 924 N.W.2d 671 (2019). This assignment of error is not appropriate for our consideration at this time.

WEIGHING OF EVIDENCE

Goebel finally assigns that the district court erred when it weighed the evidence before it on a motion for summary judgment and decided disputed facts rather than determining whether genuine issues of fact were present and halting its inquiry when such issues were identified. We disagree. Goebel does make a proper statement of law. That is, summary judgment is proper if the pleadings and admissible evidence offered at the hearing show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Harris v. O'Connor*, 287 Neb. 182, 842 N.W.2d 50 (2014). That said, the district court granted summary judgment here because it found expert witness testimony was required to establish causation in light of Arps' challenge of that issue, and that Goebel failed to provide contradictory expert testimony on that issue. As such the district court did not weigh evidence on this issue, it found that Goebel failed to provide contradictory evidence on this issue. The Nebraska Supreme Court has held that, in connection with a summary judgment motion, "[o]nce the moving party makes a prima facie case, the burden shifts to the party opposing the motion to produce admissible contradictory evidence showing the existence of a material issue of fact that prevents judgment as a matter of law." *Thompson v. Johnson*, 299 Neb. 819, 830, 910 N.W.2d 800, 808 (2018). The district court did not grant summary judgment here based upon the weight of competing evidence by Goebel and Arps. Goebel's assignment of error is without merit.

PRESCRIPTIVE EASEMENT

Finally, Arps cross-appeals assigning that the district court erred when it failed to evaluate or rule on Arps' counterclaim seeking a prescriptive easement, which Arps argues would bar this action and any future similar nuisance or trespass actions. Again we note, an issue not presented to or decided upon by the trial court is not an appropriate issue for consideration on appeal. *Ecker v. E & A Consulting Group, supra*. Because the district court did not decide this issue, we cannot consider it now.

CONCLUSION

We affirm the district court's grant of Arps' motion for summary judgment as to those portions of Goebel's claim that Arps produced hazardous or toxic dust which caused physical injury to Goebel, caused an increase in mosquitoes on Goebel's property, caused adverse health effects to Goebel, caused damage from the pollution of ground or storm water draining from Arps' facility, or inhibited the growth of Goebel's lawn and garden. We reverse the district court's grant of summary judgment as to Goebel's claims that Arps' alleged increased production caused excessive dust (as opposed to hazardous or toxic dust), noise, odors, and traffic, which caused damages to Goebel, and we remand the matter for further proceedings.

AFFIRMED IN PART, AND IN PART REVERSED AND
REMANDED FOR FURTHER PROCEEDINGS.